2014-1211

In The

# United States Court Of Appeals

For The Federal Circuit

**Clerisy Corporation, Reed Transition Technologies, LLC,**
Plaintiffs-Appellees,

v.

**Airware Holdings, Incorporated (d/b/a Airware Labs),**
**Crown Dynamics Corporation,**
Defendants-Appellants

_____

Appeal from the United States District Court for the
District of Arizona in No. 2:12-CV-2110, Paul G. Rosenblatt
_____

CORRECTED

BRIEF OF DEFENDANT-APPELLANTS AIRWARE HOLDINGS, INC. AND
CROWN DYNAMICS CORP.

Devan V. Padmanabhan, #0240126
Paul J. Robbennolt, #0240497
Michelle E. Dawson, #0388610
WINTHROP & WEINSTINE, P.A.
225 South Sixth Street, Suite 3500
Minneapolis, MN 55402
*Attorneys for Defendant-Appellants*
Telephone: (612) 604-6400
Facsimile: (612) 604-6800
dpadmanabhan@winthrop.com
probbennolt@winthrop.com
mdawson@winthrop.com

Form 9

FORM 9. Certificate of Interest

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Clerisy Corp, et al.    v. Airware Holdings, Inc., et al.

No. 14-1211

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)

Airware Holdings, Inc. certifies the following (use "None" if applicable; use extra sheets if necessary):

1.    The full name of every party or amicus represented by me is:

Airware Holdings, Inc. (d/b/a Airware Labs)
Crown Dynamics Corp.

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

None.

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None.

4. ☑  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Devan V. Padmanabhan, Paul J. Robbennolt, and Michelle E. Dawson of Winthrop & Weinstine, PA.

| 1/22/2014 | /s/ Paul J. Robbennolt |
|---|---|
| Date | Signature of counsel |
| | Paul J. Robbennolt |
| | Printed name of counsel |

Please Note: All questions must be answered
cc: _____

124

Case: 14-1211 Case: 14-1211 CASE PARTICIPANTS ONLY Document: 15 Document: 21 Page: 2 Filed: 03/11/2014 Page: 3 Filed: 03/11/2014

Case: 14-1211     Document: 15     Page: 2     Filed: 01/23/2014

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Clerisy Corporation v. Airware Holdings Incorporated

No. 14-1211

## CERTIFICATE OF SERVICE

I, Paul J. Robbennolt, attorney for Appellant Airware Holdings Incorporated, hereby certify that I caused the **Certificate of Interest** to be filed electronically with the Clerk of Courts through ECF, and that ECF will send an e-notice of the electronic filing to the following:

Frederick JM Price
Bond Schoeneck & King PLLC - Syracuse, NY
1 Lincoln Ctr., Ste. 1800
Syracuse, NY 13202-1355
fjprice@bsk.com

Jeremy P Oczek
Katie I. Ried
Bond Schoeneck & King PLLC - Buffalo, NY
Key Center
40 Fountain Plz., Ste. 600
Buffalo, NY 14202-2200
jpoczek@bsk.com
kreid@bsk.com

Dated: January 23, 2014

Winthrop & Weinstine, P.A.

/s/Paul J. Robbennolt
Devan V. Padmanabhan
Paul J. Robbennolt
Michelle E. Dawson

225 South Sixth Street, Suite 3500
Minneapolis, MN 55402
(612) 604-6400

*Attorneys for Appellants*

8719191v1

# <u>TABLE OF CONTENTS</u>

Certificate of Interest

Table of Contents ....................................................................................... i

Table of Authorities ................................................................................. iv

Statement of Related Cases ....................................................................... 1

Jurisdictional Statement ............................................................................ 2

Statement of the Issues ............................................................................. 3

Statement of the Case ............................................................................... 4

Statement of the Facts .............................................................................. 5

      I.      The Lawsuit and the Parties ................................................ 5

      II.     The '982 Patent and Technology ......................................... 6

      III.    Clerisy's Failure to Find a "Barrier" in the
            Accused AIR Products ........................................................ 7

            A.     AirWare's Accused Products Do Not
                  Incorporate a "Barrier" as Required by the
                  Asserted Claims .................................................... 7

            B.     Clerisy and Its Counsel Obtained Samples of
                  the Accused Products Before Filing Suit, But Were
                  Unable to Identify any "Barrier" in the Products ................. 8

            C.     Clerisy's Counsel Interfered With
                  AirWare's Sales of Its AIR Products by Sending
                  Letters to AirWare's Distributor and to a Potential
                  Customer ............................................................... 9

            D.     AirWare Provided Notice to Clerisy's
                  Counsel That The Filing of Clerisy's Complaint
                  Constitutes a Rule 11 Violation Because the AIR
                  Products Have No "Barrier" ................................... 9

i

E.      Clerisy's Depositions of AirWare Witnesses
Confirmed—Again—That the Accused Products
Do Not Have a "Barrier" ..................................................10

IV.    The District Court's Disposition of the Case Below...........................12

Summary of the Argument..........................................................................12

Argument.....................................................................................................15

I.      The Legal Standards..................................................................15

A.      Fed. R. Civ. P. 41(a)(2) and its Built-In
Protection for Defendants....................................................15

B.      The Standard of Review for the District
Court's Rule 41(a)(2) Decision ..........................................18

C.      28 U.S.C. § 1927 Sanctions for Multiplying
the Proceedings....................................................................18

D.      The Standard of Review for 28 U.S.C. §
1927 Fee Denials .................................................................19

II.     The District Court Abused Its Discretion When it
Applied the Wrong Legal Standard and Denied
AirWare's Motion to Condition Clerisy's Voluntary
Dismissal Without Prejudice on the Reimbursement of
AirWare's Attorneys' Fees and Costs ..........................................20

A.      The District Court Committed an Error of
Law By Holding That It Could Not "Impose Fees
and Costs as a Condition of Voluntary Dismissal"
Without an "Independent Basis" To Do So ........................21

B.      The District Court Abused its Discretion By
Denying AirWare's Motion for the Imposition of
Fees and Costs on Clerisy as a Condition of the
Dismissal of Clerisy's Claims.............................................24

III.    The District Court Abused Its Discretion When It
Denied AirWare's Motion to Impose Attorneys' Fees and
Costs on Clerisy's Counsel Without Properly
Considering AirWare's Argument That Clerisy's
Infringement Claims Were Frivolous and in Bad Faith ...............................28

Conclusion ..........................................................................................................31

Addendum

Certificate of Service

Certificate Of Compliance

# TABLE OF AUTHORITIES

## Cases:

*Alamance Indus., Inc. v. Filene's*,
    291 F.2d 142 (1st Cir.), *cert. denied*, 368 U.S. 831 (1961)...........................16

*Baldwin Hardware Corp. v. FrankSu Enter. Corp.*,
    78 F.3d 550 (Fed. Cir. 1996) ........................................................................19

*Chang v. Pomeroy*,
    No. CIV-S-08-657-FCDS-DAD-PS, 2011 WL 618192, at *1
    (E.D. Cal. Feb. 10, 2011)...................................................................22, 23

*Chavez v. Northland Group*,
    Civ. No. 09-2521-PHX-LOA, 2011 WL 317482, at *3
    (D. Ariz. Feb. 1, 2011)...................................................................22

*Colombrito v. Kelly*,
    764 F.2d 122 (2d Cir. 1985) ........................................................................26

*Eltech Sys. Corp. v. PPG Indus.*,
    903 F.2d 805 (Fed. Cir. 1990) ....................................................................29

*Furminator, Inc. v. Ontel Products Corp.*,
    246 F.R.D. 579 (E.D. Mo. 2007)............................................................ 25-26

*Gap, Inc. v. Stone Intern. Trading, Inc.*,
    169 F.R.D. 584 (S.D.N.Y. 1997)..................................................................25

*Goldlawr, Inc. v. Shubert*,
    32 F.R.D. 467 (S.D.N.Y. 1963).....................................................................25

*Heckethorn v. Sunan Corp.*,
    992 F.2d 240 (9th Cir. 1993) ................................................................21, 22

*Lahiri v. Universal Music & Video Distribution Corp.*,
    606 F.3d 1216 (9th Cir. 2010) .............................................................19, 28

*LeCompte v. Mr. Chip, Inc.*, 528 F.2d 601 (5th Cir. 1976) ...................................16

*Legacy Mortgage, Inc. v. Title Guaranty Escrow Servs., Inc.*,
Civ. No. 11-00767 JMS-KSC, 2013 WL 1991563, at *2
(D. Hawai'i May 10, 2013) ...................................................17, 24

*McCants v. Ford Motor Co., Inc.*,
781 F.2d 855 (11th Cir. 1986) ......................................16, 17, 24, 25

*Mortgage Guaranty Ins. Corp. v. Richard Carlyon Co.*,
904 F.2d 298 (5th Cir. 1990) ................................................17, 24

*Pac. Harbor Capital, Inc. v. Carnival Air Lines, Inc.*,
210 F.3d 1112 (9th Cir. 2000) .......................................................19

*Phonometrics, Inc. v. Westin Hotel Co.*,
350 F.3d 1242 (Fed. Cir. 2003) ....................................................29

*Raylon, LLC v. Complus Data Innovations, Inc.*,
700 F.3d 1361 (Fed. Cir. 2012) ....................................................31

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
659 F.3d 1142 (Fed. Cir. 2011) ........................................18, 20, 23

*Smith v. Lenches*,
263 F.3d 972 (9th Cir. 2001) ........................................................18

*Stevedoring Servs. Of Am. v. Armilla Intern. B.V.*,
889 F.2d 919 (9th Cir. 1989) ........................................................17

*Walter Kidde Portable Equip., Inc. v. Universal Sec. Instruments, Inc.*,
479 F.3d 1330 (Fed. Cir. 2007) ....................................................18

*Waymark Corp. v. Porta Sys. Corp.*,
334 F.3d 1358 (Fed. Cir. 2003) ....................................................19

*Westlands Water Dist. v. United States*,
100 F.3d 94 (9th Cir. 1996) ...................................................*passim*

## Rules:

Federal Circuit Rule 47.5 ........................................................................1

Fed. R. Civ. P. 41 ...................................................................................22

Fed. R. Civ. P. 41(a) ...............................................................................17

Fed. R. Civ. P. 41(a)(1) ..........................................................................15

Fed. R. Civ. P. 41(a)(2) ....................................................................*passim*

## Statutes:

28 U.S.C. § 1295(a)(1) ..............................................................................2

28 U.S.C. § 1331 .......................................................................................2

28 U.S.C. § 1338(a) ..................................................................................2

28 U.S.C. § 1927 ..............................................................................*passim*

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to Federal Circuit Rule 47.5, Appellants AirWare Holdings, Inc. and Crown Dynamics Corp. ("AirWare") state that they are not aware of any other appeal in or from the same civil action or proceeding in the trial court that was previously before this or any other appellate court. There are no cases known to counsel to be pending in this or any other court that will directly affect or be directly affected by this Court's decision in the pending appeal.

## <u>JURISDICTIONAL STATEMENT</u>

The United States District Court for the District of Arizona ("the District Court") had subject matter jurisdiction over this civil action pursuant to 28 U.S.C. §§ 1331 and 1338(a) in that the Complaint included a cause of action for patent infringement. This Court has jurisdiction to determine this appeal pursuant to 28 U.S.C. § 1295(a)(1) in that the underlying action contained claims arising under 28 U.S.C. § 1338(a).

On December 4, 2013, the District Court entered Final Judgment in this civil action. AirWare filed a timely notice of appeal on January 3, 2014.

## STATEMENT OF THE ISSUES

This appeal seeks reversal of the order of the United States District Court for the District of Arizona granting the Appellees' motion to dismiss the action without prejudice and denying the Appellants' request for the payment of their fees and costs by Appellees as a condition of such dismissal pursuant to Fed. R. Civ. P. 41(a)(2) and/or 28 U.S.C. § 1927 and presents the following issues:

1. Did the District Court abuse its discretion when it refused to make Appellees' voluntary dismissal without prejudice under Fed. R. Civ. P. 41(a)(2) conditional upon payment of Appellants' fees and costs?

2. Did the District Court abuse its discretion when it refused to impose sanctions on Appellees' counsel pursuant to 28 U.S.C. § 1927 for Appellants' excess fees and costs incurred as a result of the Appellees' unreasonable and vexatious multiplication of the proceedings below?

## STATEMENT OF THE CASE

Appellees Clerisy Corp. and Reed Transition Technologies, LLC, ("Clerisy") commenced this action on July 26, 2012, in the United States District Court for the Western District of New York against Appellants AirWare Holdings, Inc. and Crown Dynamics Corp. ("AirWare") alleging infringement of U.S. Patent No. 6,295,982 ("the '982 Patent"). The '982 Patent relates to an apparatus for and methods of administering volatile substances into an inhalation flow path. In October 2012, the District Court in New York transferred this case to the United States District Court for the District of Arizona.

The District Court issued its claim construction hearing in this matter on July 24, 2013. More than two months later, Clerisy moved to dismiss the action voluntarily, without prejudice, pursuant to Fed. R. Civ. P. 41(a)(2). Simultaneously, Clerisy provided AirWare with a covenant not to sue AirWare or its customers for infringement of the '982 Patent based upon the products accused in this litigation.

In response to Clerisy's motion for a voluntary dismissal, AirWare filed a motion requesting that the District Court condition Clerisy's requested dismissal without prejudice on Clerisy's and its counsel's payment of AirWare's reasonable attorneys' fees and costs pursuant to Fed. R. Civ. P. 41(a)(2) and 28 U.S.C. § 1927. The District Court denied AirWare's motion and granted Clerisy's motion, thus

4

dismissing Clerisy's suit without prejudice and without imposing conditions on such dismissal pursuant to Fed. R. Civ. P. 41(a)(2). The District Court also refused to remediate the expense incurred by AirWare by imposing fees on Clerisy's counsel under 28 U.S.C. § 1927. AirWare appeals the District Court's denial of attorneys' fees and costs on both grounds.

## STATEMENT OF THE FACTS

### I.    The Lawsuit and the Parties

Appellees commenced this action against Appellants on July 26, 2012, accusing Appellants of infringing U.S. Patent No. 6,295,982 ("the '982 Patent"). JA-62. Reed Technologies, LLC, a Nevada corporation headquartered in Sedona, Arizona, is the owner of the '982 Patent. JA-63. Clerisy Corp., a New York corporation located in Rochester, New York, is the sole licensee of the '982 Patent. JA-64.

AirWare Holdings, Inc. is a Nevada corporation, with its sole place of business in Scottsdale, Arizona. JA-78. As a result of a merger, AirWare Holdings, Inc. became a wholly owned subsidiary of Crown Dynamics Corp. *Id.* AirWare, a four-employee company, has two distinct product lines: Brēz and AIR. JA-79. The Brēz product, which is not accused of infringement in this action, is a nasal breathing aid that is inserted into the nostril and provides for improved breathing and reduces snoring. *Id.* AirWare's AIR line of products are its newer

5

products, and are the current focus of its business. JA-81. The AIR products are
nasal breathing aids that incorporate a filter, vapor molecules of essential oils, or
both. JA-79. The AIR products include the accused products in this case: AIR
Travel, AIR Decongest, AIR Sleep/Snore, AIR Headache, AIR Nausea and AIR
Sport products ("the accused products"). JA-81.

## II.    The '982 Patent and Technology

Clerisy asserted in this case that AirWare's AIR products infringe claims 1,
11, and 15 of the '982 Patent, titled "Apparatus for and Methods of Administering
Volatile Substances into an Inhalation Flow Path." JA-64. Those claims are
directed generally to a device that is attachable in or near a user's nose and which
has a carrier with volatile oils, the vapors of which may be inhaled by the user. *See*
JA-60 at claims 1, 11, and 15. Each of the asserted claims requires a "carrier"
which carries a volatile substance. *Id.* The claims also require a separate "barrier"
to prevent the volatile substance from touching the user's skin, as follows:

> a barrier coupled to a surface of the carrier, the barrier
> being substantially impermeable to the … volatile
> substances carried by the carrier; … with the barrier
> adapted to be interposed between the carrier and the
> surface of the skin to prevent the at least one volatile
> substance from contacting the skin.

*Id.* In its claim construction order, the District Court confirmed that the "barrier"
must be coupled to the carrier, JA-42–43, and must prevent contact between the

volatile substance and the user's skin: "[t]he portion of the vehicle or device that prevents contact between the skin and the volatile substance." JA-37.

## III. Clerisy's Failure to Find a "Barrier" in the Accused AIR Products

### A. AirWare's Accused Products Do Not Incorporate a "Barrier" as Required by the Asserted Claims

AirWare's accused AIR products are single-piece devices that are designed to be inserted in the user's nostrils:



The entire device is infused with essential oils in the following manner: the products are put into a balloon; the essential oils are put into the top of the balloon; and as the essential oil vaporizes, the vapor molecules fill the balloon and

"infiltrate all parts of the product." JA-238, 241–42. The essential oil itself—in its liquid form—never comes into contact with the AIR devices. JA-239–40.

As even a glance at the AIR products confirms, they do not incorporate a "barrier." There is no structure that prevents essential oil molecules from coming into contact with the user's skin.

## B. Clerisy and Its Counsel Obtained Samples of the Accused Products Before Filing Suit, But Were Unable to Identify any "Barrier" in the Products

On July 9, 2012—before it filed suit—Clerisy's counsel requested samples of the accused AIR products. *See* JA-79 at ¶ 16. Although AirWare did not provide samples in response to that request, it did send samples to a Clerisy employee, Yvonne Friga, who had ordered other AirWare products. JA-87–89 at ¶¶ 5-11. Thus, Clerisy and its counsel both had the opportunity to examine AirWare's AIR products and confirm that they did not incorporate a "barrier." Nevertheless, Clerisy commenced this action on July 26, 2012, when its counsel filed a patent infringement complaint against AirWare. JA-62.

Naturally, Clerisy and its counsel were unable to identify any structure or portion of the accused devices that could conceivably constitute a "barrier." In their initial infringement claim chart, which Clerisy provided to AirWare at the outset of the case, Clerisy's counsel did not identify any structure at all that they contended met the "barrier" limitation of the asserted claims. JA-249–50. Instead,

8

Clerisy's counsel simply concluded that "AIR branded products with essential oils are designed and manufactured so that the essential oils do not touch the skin or the inside lining of the nasal passages," without identifying any "barrier." *Id.*

### C. Clerisy's Counsel Interfered With AirWare's Sales of Its AIR Products by Sending Letters to AirWare's Distributor and to a Potential Customer

Despite the fact that Clerisy's counsel had been unable to identify a "barrier" in AirWare's products, they immediately began sending letters about Clerisy's patent infringement suit to AirWare's sole U.S. distributor, Quest Products, and one customer, Supervalu. *See* JA-260–61; JA-263–64. These letters had the effect that Clerisy's counsel most likely intended: although Supervalu had ordered AIR products, they refused to put the product on the shelves for three months, and ultimately informed Quest that "they can't put this in the stores because of [Mr. Oczek's] letter." JA-267–68.

### D. AirWare Provided Notice to Clerisy's Counsel That The Filing of Clerisy's Complaint Constitutes a Rule 11 Violation Because the AIR Products Have No "Barrier"

On August 10, 2012—just two weeks after Clerisy commenced this suit—AirWare's counsel took steps to point out the obvious to Clerisy's counsel: that the AIR products have no "barrier." *See* JA-270–71. AirWare's counsel explained in detail that the accused products "do not include a barrier as required in the '982 patent, specifically a barrier 'substantially impermeable to the [] volatile

substances carried by the carrier' and 'adapted to be interposed between the carrier and the [] skin to prevent the [] volatile substances from contacting the skin.'" JA-271. AirWare's counsel therefore demanded that Clerisy's counsel dismiss the complaint within 21 days. AirWare's counsel further demanded that Clerisy's counsel discontinue their interference with AirWare's business relationships. *Id.*

After Clerisy's counsel responded but refused to dismiss the complaint, AirWare's counsel wrote again on August 24 to remind them of their responsibilities under Rule 11. JA-273–74. AirWare's counsel again pointed out that the AIR products have no barrier, and again demanded that Clerisy's counsel dismiss the litigation. *Id.* Clerisy refused.

### E.  Clerisy's Depositions of AirWare Witnesses Confirmed—Again—That the Accused Products Do Not Have a "Barrier"

Even if simple observation of the AIR products was not sufficient to establish that they do not have a "barrier," Clerisy obtained unequivocal evidence that there is no barrier, and that molecules of the essential oils touch the user's skin, in July 2013 when counsel took the deposition of David Dolezal, AirWare's founder. Mr. Dolezal testified that molecules of the essential oils "infiltrate all parts of the product." JA-238, 241–42. Mr. Dolezal also confirmed unequivocally that no portion of the AIR devices prevent contact between the essential oil molecules and the user's skin:

- It is not fair to say that the accused products are designed so that the infused oils do not touch the nose (JA-235–36);

- AIR products have no "barrier" (JA-243);

- Nothing prevents oil molecules from coming into contact with the nose (JA-236–37).

In fact, Mr. Dolezal confirmed that, with the AIR products, essential oil molecules **do** come into contact with the mucosa membrane of the user. JA-240.

Less than a month later, yet another witness, Michael Doll (AirWare's Rule 30(b)(6) witness), confirmed for Clerisy and its counsel that the AIR products have no "barrier." *See* JA-279–80. Mr. Doll also confirmed beyond doubt that nothing in the accused products prevents the oil molecules from contacting the skin of the user:

- "Q: Do the accused products—the infused products prevent contact between the skin and the volatile substance? A: No" (JA-278);

- There is no structure or part of the device that prevents contact between the volatile substance molecules and the skin of the user (JA-278–80);

- Oil molecules do come into contact with the nose (JA-277, 280).

In light of the undisputed evidence, Clerisy and its counsel could have—and should have—signed a consent judgment of noninfringement and dismissed the case. Instead, they elected to continue to pursue this case, forcing AirWare to continue to waste its resources defending a frivolous claim.

## IV.    The District Court's Disposition of the Case Below

Clerisy moved for a voluntary dismissal without prejudice pursuant to Fed. R. Civ. P. 41(a)(2) and with its papers provided AirWare with a covenant not to sue AirWare or its customers for infringement of the '982 Patent based on the accused products as then-designed.  JA-24–25.  Clerisy cited a lack of resources for its abrupt desire to withdraw from the litigation, despite a mostly favorable claim construction order.  *See* JA-33–37; JA-298 at ¶ 17.  AirWare did not oppose the voluntary dismissal, but cross-moved for an order conditioning the dismissal on Clerisy's reimbursement of the attorneys' fees and costs AirWare incurred in this litigation.  JA-25.  AirWare asked the District Court for an award of fees levied against either Clerisy or its counsel pursuant to either Rule 41(a)(2) or 28 U.S.C. § 1927.  *Id.*  On December 3, 2013, the District Court entered its Order denying AirWare's cross-motion for attorneys' fees and costs under both Fed. R. Civ. P. 41(a)(2) (as a condition of Appellees' motion for voluntary dismissal) and 28 U.S.C. § 1927.  *Id.*

## SUMMARY OF THE ARGUMENT

Frivolous patent lawsuits are a drain on the resources of the courts and the parties.  Defendants like AirWare in this case are frequently placed between a rock and hard place:  they must either spend hundreds of thousands of dollars in litigation fees before reaching a point where the Court addresses the merits of the

claims, or must pay to the plaintiff a licensing fee for a patent that they do not infringe.

Clerisy's allegations of infringement in this litigation present a straightforward case of frivolousness. All of the claims asserted by Clerisy expressly require a "barrier" that is "substantially impermeable" to the volatile substances and which is "adapted to be interposed between the carrier and the skin to prevent the one or more volatile substances from contacting the skin." AirWare's accused products unequivocally **do not incorporate** such a barrier. This was, or should have been, obvious to Clerisy from the beginning; it obtained samples of AirWare's products, a cursory review of which would have revealed that the products have no "barrier." When Clerisy persisted with its allegations, AirWare tried to put an end to the unnecessary litigation expenses by informing Clerisy and its counsel at the very outset of the case that its products did not incorporate the "barrier" of the asserted claims of the '982 Patent, and warning Clerisy that proceeding with its claims would constitute a Rule 11 violation. Clerisy's counsel refused to withdraw the lawsuit. Clerisy subsequently confirmed through discovery that molecules of the essential oil do, in fact, come into contact with the user's skin when in use. Clerisy **still did not withdraw its infringement allegations**.

Unsurprisingly, Clerisy and its counsel were **never able to identify a structure of the accused products that met the "barrier" limitation throughout the case**, despite the fact that the District Court adopted Clerisy's chosen construction of the "barrier" claim term.  Through its own pre-suit investigation, through information provided by AirWare's counsel at the outset of the case, and through the undisputed facts Clerisy uncovered in discovery, Clerisy and its counsel knew, or should have known, that its infringement claims were groundless, yet they proceeded with the case through the close of discovery before finally seeking to dismiss the case without prejudice.

Clerisy's voluntary dismissal was a case of "too little, too late;" AirWare had already incurred several hundred thousand dollars in attorneys' fees and costs, and lost substantial business as a result of letters that Clerisy's counsel wrote to AirWare's distributor and a customer, repeating its baseless infringement allegations.  Clerisy's action was carefully designed in an effort to avoid sanctions for its conduct.  For example, Clerisy sought to dismiss its claims voluntarily before AirWare could file a motion for summary judgment of noninfringement and an accompanying Rule 11 motion for sanctions.  Clerisy also refused to dismiss with prejudice, which would have given AirWare the ability to seek an "exceptional case" award as the prevailing party; instead, Clerisy moved to dismiss **without prejudice** and gave AirWare a covenant not to sue.  Thus, AirWare

sought to recover its wasted attorneys' fees and expenses through the vehicles available to it: Rule 41(a)(2), which authorizes the District Court to condition a voluntary dismissal on the payment of the defendant's fees and costs, and Section 1927, which permits a fee award for "vexatious litigation."

Given the conduct of Clerisy and its counsel, the District Court abused its discretion when it permitted Clerisy to dismiss its claims without prejudice before conditioning that dismissal on Clerisy's reimbursement of AirWare's attorneys' fees and expenses incurred in this litigation. In granting Clerisy's motion and denying AirWare's motion, the District Court erred by: 1) appearing to incorrectly apply Ninth Circuit law allegedly requiring an "independent basis" for an award of fees and costs under Rule 41(a)(2); and 2) giving insufficient weight to the frivolous nature of Clerisy's infringement claims, and particularly to the fact that Clerisy was never able to identify a structure that met the "barrier" limitation, despite prevailing on claim construction. Accordingly, AirWare respectfully requests that this Court reverse the decision of the District Court and remand this matter for an award of AirWare's attorneys' fees and costs.

## ARGUMENT

### I.     The Legal Standards

#### A.     Fed. R. Civ. P. 41(a)(2) and its Built-In Protection for Defendants

After a defendant answers a complaint, a plaintiff may only dismiss its claims with the defendant's consent or by court order. Fed. R. Civ. P. 41(a)(1) and

41(a)(2). Federal Rule of Civil Procedure 41(a)(2) expressly permits the District Court to impose any terms it considers proper on such a dismissal. Fed. R. Civ. P. 41(a)(2). As many courts have held, those terms and conditions exist for the defendant's protection: the purpose of the rule "is primarily to prevent voluntary dismissals which unfairly affect the other side, and to permit the imposition of curative conditions." *McCants v. Ford Motor Co., Inc.*, 781 F.2d 855, 856 (11th Cir. 1986), quoting *Alamance Indus., Inc. v. Filene's*, 291 F.2d 142, 146 (1st Cir.), *cert. denied*, 368 U.S. 831 (1961). Thus, the court "should bear in mind principally the interests of the defendant, for it is the defendant's position that the court should protect." *Id. See also LeCompte v. Mr. Chip, Inc.*, 528 F.2d 601, 604 (5th Cir. 1976).

Among the terms that have been imposed upon dismissing plaintiffs, a court has the discretion to condition a dismissal without prejudice upon the payment of "appropriate costs and attorney fees." *Westlands Water Dist. v. United States*, 100 F.3d 94, 96 (9th Cir. 1996). "A plaintiff ordinarily will not be permitted to dismiss an action without prejudice under Rule 41(a)(2) after the defendant has been put to considerable expense in preparing for trial, except on condition that the plaintiff reimburse the defendant for at least a portion of his expenses of litigation." *McCants*, 781 F.2d at 860. *See also Westlands*, 100 F.3d at 97 (Defendant's interests arising out of expense incurred in defending a lawsuit "can be protected

by conditioning the dismissal without prejudice upon the payment of appropriate costs and attorney fees"); *Mortgage Guaranty Ins. Corp. v. Richard Carlyon Co.*, 904 F.2d 298, 300 (5th Cir. 1990) ("Most often, the courts require plaintiffs to bear the attorneys' fees and costs of the dismissed defendant"); *Legacy Mortgage, Inc. v. Title Guaranty Escrow Servs., Inc.*, Civ. No. 11-00767 JMS-KSC, 2013 WL 1991563, at *2 (D. Hawai'i May 10, 2013) ("District courts have broad discretion to impose an award of attorneys' fees as a condition for dismissing an action without prejudice"). Such expenses include costs and reasonable attorneys' fees. *McCants*, 781 F.2d at 860.

It's true that the payment of fees is not a prerequisite to a rule 41(a) dismissal. *Stevedoring Servs. Of Am. v. Armilla Intern. B.V.*, 889 F.2d 919, 921 (9th Cir. 1989). But the Ninth Circuit (the applicable law here) has expressly held that fees and costs may be awarded as a condition of dismissal because "the expense incurred in defending against a lawsuit does not amount to *legal prejudice*," and therefore, other relief is out of a defendant's reach (namely, a denial of the dismissal and a final determination on an accused infringer's rights). *See Westlands*, 100 F.3d at 97 (instead, "defendants' interests can be protected by conditioning the dismissal without prejudice upon the payment of appropriate costs and attorney fees.").

## B. The Standard of Review for the District Court's Rule 41(a)(2) Decision

In reviewing a purely procedural question, such as a Rule 41(a)(2) voluntary dismissal without prejudice, the Federal Circuit applies the law of the regional circuit, in this case, the Ninth Circuit. *Walter Kidde Portable Equip., Inc. v. Universal Sec. Instruments, Inc.*, 479 F.3d 1330, 1335–36 (Fed. Cir. 2007). The Ninth Circuit generally reviews Rule 41(a)(2) decisions under an abuse of discretion standard. *Smith v. Lenches*, 263 F.3d 972, 975 (9th Cir. 2001). But where such a decision is "based upon an error of law," the Federal Circuit holds that the District Court abused its discretion and, "[t]o the extent the court's decision is based upon an issue of law, [the Federal Circuit] review[s] that issue de novo." *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1147–48 (Fed. Cir. 2011) (reversing district court for application of wrong law, remanding case for entry of relief for appellant where undisputed facts, as applied to the correct law, required no hearing on remand); *see also Westlands*, 100 F.3d at 96 ("The district court abuses its discretion when 'it bases its decision on an erroneous view of the law or a clearly erroneous assessment of the facts.'")

## C. 28 U.S.C. § 1927 Sanctions for Multiplying the Proceedings

Pursuant to 28 U.S.C. § 1927, District Courts may require an attorney to pay opposing counsel's attorneys' fees and costs when that attorney "multiplies the proceedings in any case unreasonably and vexatiously . . . ." 28 U.S.C. § 1927.

This section authorizes the imposition of sanctions against any lawyer who wrongfully proliferates litigation proceedings once a case has commenced. *Pac. Harbor Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1117–18 (9th Cir. 2000); *see also Lahiri v. Universal Music & Video Distribution Corp.*, 606 F.3d 1216, 1219 (9th Cir. 2010). Although a finding of bad faith is required, *Pac. Harbor*, 210 F.3d at 1118, courts in the Ninth Circuit apply a subjective standard, so knowing or reckless conduct meets the standard. *Id.* Furthermore, "the lack of an explicit finding of bad faith by the trial judge will not preclude sanctions when the record supports such a finding." *Baldwin Hardware Corp. v. FrankSu Enter. Corp.*, 78 F.3d 550, 561 (Fed. Cir. 1996) (citations omitted).

## D. The Standard of Review for 28 U.S.C. § 1927 Fee Denials

Here, too, the Federal Circuit reviews District Court decisions pursuant to 28 U.S.C. § 1927 under the law of the regional circuit where the statutory fee provision is not intimately related to patent law. *Waymark Corp. v. Porta Sys. Corp.*, 334 F.3d 1358, 1362 (Fed. Cir. 2003). The Ninth Circuit reviews "all aspects of a sanctions award under section 1927 for abuse of discretion." *Baldwin Hardware Corp.*, 78 F.3d at 561.

## II.  The District Court Abused Its Discretion When it Applied the Wrong Legal Standard and Denied AirWare's Motion to Condition Clerisy's Voluntary Dismissal Without Prejudice on the Reimbursement of AirWare's Attorneys' Fees and Costs

The District Court abused its discretion when it imposed a more exacting standard than required when deciding AirWare's motion to condition Clerisy's voluntary dismissal on its reimbursement of AirWare's attorneys' fees and costs. Specifically, the District Court appeared to conclude that it must have an "independent basis" to impose fees and costs as a condition of voluntary dismissal—that is, some basis beyond the discretionary authority conferred upon the court by the plain terms of Fed. R. Civ. P. 41(a)(2).  *See* JA-27.  Although, as the case law cited by the District Court confirms, this is true of fee awards against **opposing counsel**.  That standard does not apply to fee awards against **parties**. Because the District Court based its decision on an erroneous view of the law, the District Court abused its discretion in denying AirWare's motion.  *See Westlands*, 100 F.3d at 96.  Accordingly, this Court should reverse the District Court's order dismissing Clerisy's suit without first conditioning such dismissal on payment of AirWare's fees and costs.

Because the District Court's decision was "based on an error of law," this Court may review that decision de novo.  *See Robert Bosch LLC*, 659 F.3d at 1147–48 (Federal Circuit remanded for entry of relief for appellant without further fact-finding).  Absent a de novo review in this court, however, the case should be

remanded to the District Court for a reassessment of the fee decision against Clerisy in light of the correct legal standard.

### A. The District Court Committed an Error of Law By Holding That It Could Not "Impose Fees and Costs as a Condition of Voluntary Dismissal" Without an "Independent Basis" To Do So

The District Court denied AirWare's motion for fees and costs as "not persuasive in light of Ninth Circuit law," which the District Court found required that the "Court must have an 'independent basis' to impose fees and costs as a condition of voluntary dismissal." JA-27. The Court concluded that it could "find[] no basis to do so here." *Id.* This is an error of law.

The cases cited by the District Court do not stand for the proposition that the District Court must have an independent basis to impose fees and costs on a **party** as a condition of a voluntary dismissal. The principal case cited by the District Court, *Heckethorn v. Sunan Corp.*, 992 F.2d 240, 242 (9th Cir. 1993), stands only for the proposition that Rule 41(a)(2) "is not 'specific statutory authority' for the imposition of sanctions **against an attorney**." *Heckethorn* does not address the imposition of fees against a **party**. *Id.* The leading case in the Ninth Circuit addressing the imposition of fees and costs as a condition for dismissal without prejudice does not indicate that any "independent basis" for the imposition of such fees and costs on a party is required. *See Westlands*, 100 F.3d at 97.

21

The two unpublished lower court cases cited by the District Court are also inapposite. *Chavez v. Northland Group* cites *Heckethorn* for the proposition that an independent basis is required to impose "sanctions against an attorney." *Chavez v. Northland Group*, Civ. No. 09-2521-PHX-LOA, 2011 WL 317482, at *3 (D. Ariz. Feb. 1, 2011). It also cites *Westlands* with approval for its holding that Rule 41(a)(2) gives the court "discretion to condition **a dismissal without prejudice** upon the payment of 'appropriate costs and attorneys' fees.'" *Id.* (emphasis added). Unlike *Westlands* and this case, the plaintiff in *Chavez* sought to dismiss **with prejudice**. To the extent the court held that an independent basis was required to impose fees on a party under Rule 41(a)(2), that holding should be limited to dismissals with prejudice. If the holding was intended to apply also to dismissals without prejudice, it is incorrect in light of the *Westlands* decision.

Similarly, *Chang v. Pomeroy* dealt with a Rule 41 dismissal **with prejudice**. No. CIV-S-08-657-FCDS-DAD-PS, 2011 WL 618192, at *1 (E.D. Cal. Feb. 10, 2011). The Court correctly cited *Westlands* for the proposition that the court "has the discretion to condition a dismissal *without* prejudice upon the payment of defendant's 'appropriate costs and attorney fees.'" *Id.* *Chang* continues by citing *Heckethorn* for a holding that the "court cannot impose fees and costs as a condition of voluntary dismissal absent some basis other than the mere fact of the plaintiff's request for Rule 41(a)(2)." *Id.* That is a correct statement as it applies

to the imposition of sanctions against **attorneys**. To the extent the court in *Chang* intended that holding to apply to the impositions of fees and costs against a **party** for the voluntary dismissal of a case **without prejudice**, it is an incorrect statement of the law as set forth in *Westlands*.

Thus, by applying the wrong legal standard, the District Court abused its discretion when it denied AirWare's motion for the imposition on Clerisy of fees and costs as a condition of Clerisy's dismissal of its case without prejudice. *Robert Bosch LLC*, 659 F.3d at 1147–48. Because the District Court based its decision on an error of law, that decision is reviewable de novo by this Court. *See id.* ("To the extent the court's decision is based upon an issue of law, we review that issue de novo."). For the reasons set forth below, the District Court erred when it denied AirWare's motion, and this Court should reverse that decision and remand solely for a determination of the amount of fees to be awarded to AirWare. *See id.* at 1156–57 ("Because the undisputed evidence conclusively shows that permanent injunctive relief is warranted in this case, we do not believe that remand [for fact-finding] of this matter is appropriate."). At the very least, however, the District Court's error of law mandates the reversal of the District Court's decision and the remand of the matter to the District Court for further consideration of the parties' respective motions and application of the correct legal standard.

**B.    The District Court Abused its Discretion By Denying AirWare's Motion for the Imposition of Fees and Costs on Clerisy as a Condition of the Dismissal of Clerisy's Claims**

As stated above, in cases where the litigation has proceeded to the point that the defendant has incurred significant fees and costs, the courts ordinarily condition a dismissal without prejudice on the plaintiff's reimbursement of the defendant's fees and costs incurred during the litigation:

> A plaintiff ordinarily will not be permitted to dismiss an action without prejudice under Rule 41(a)(2) after the defendant has been put to considerable expense in preparing for trial, except on condition that the plaintiff reimburse the defendant for at least a portion of his expenses of litigation.

*McCants*, 781 F.2d at 860. *See also Westlands*, 100 F.3d at 97 (Defendant's interests arising out of expense incurred in defending a lawsuit "can be protected by conditioning the dismissal without prejudice upon the payment of appropriate costs and attorney fees"); *Mortgage Guaranty Ins. Corp.*, 904 F.2d at 300 ("Most often, the courts require plaintiffs to bear the attorneys' fees and costs of the dismissed defendant"); *Legacy Mortgage, Inc.*, 2013 WL 1991563, at *2 ("District courts have broad discretion to impose an award of attorneys' fees as a condition for dismissing an action without prejudice"). Such expenses include costs and reasonable attorneys' fees. *McCants*, 781 F.2d at 860.

No Court has held that the district court cannot condition a dismissal on the plaintiff's reimbursement of fees in cases where the parties to a dismissal ***without***

*prejudice* also executed a covenant not to sue.  Such a result would be anathema to the "curative" nature of fee awards under Rule 41(a)(2).  *See McCants*, 781 F.2d 856.  In fact, at least one court has conditioned dismissal on the plaintiff's reimbursement of the defendant's fees and costs despite the existence of a covenant not to sue.  *Goldlawr, Inc. v. Shubert*, 32 F.R.D. 467, 470–71 (S.D.N.Y. 1963).  The *Goldlawr* court explicitly rejected the plaintiff's argument that the covenant should bar a "fee-shift as a condition of dismissal," and awarded the defendants their reasonable costs and attorneys' fees "for the extensive litigation to which defendants have been subjected."  *Id.*

The District Court cited three cases from jurisdictions outside the Ninth Circuit where courts concluded that a fee award would be inappropriate in light of the parties' execution of a covenant not to sue.  JA-27.  All three cases present starkly different scenarios from the present case, where plaintiffs sought to dismiss far earlier during the proceedings and before the respective defendants accrued the kind of legal fees and costs that AirWare has been subjected to here.

First, in *Gap, Inc. v. Stone Intern. Trading, Inc.*, the court decided against a fee award in part because the litigation was in an early stage procedurally and because the plaintiff did not commence or conduct the action in bad faith.  169 F.R.D. 584, 589 (S.D.N.Y. 1997).  Here, Clerisy did not move for its dismissal until after the close of discovery.  Similarly, in *Furminator, Inc. v. Ontel Products*

*Corp.*, 246 F.R.D. 579 (E.D. Mo. 2007), the plaintiff moved for a dismissal at a very early stage: right after a preliminary claim construction ruling in conjunction with a preliminary injunction request. *Id.* at 594. After the unfavorable ruling, plaintiff there "decided to dismiss its claims promptly to conserve the resources of both the Court and the parties." *Id.* at 593. Third and finally, the District Court's reliance on *Colombrito v. Kelly*, 764 F.2d 122 (2d Cir. 1985), is simply misplaced. In *Colombrito*, the court analyzed whether a dismissal conditioned upon an award of fees and costs is appropriate where the dismissal is **with prejudice**. *Id.* at 133– 35. Indeed, that case involved a dismissal with prejudice and is therefore not instructive in analyzing Clerisy's dismissal **without prejudice**. *See id.* at 135. See also *supra* § II-A.

The undisputed circumstances of this litigation provide a textbook case for conditioning the plaintiff's dismissal without prejudice—in this case, on Clerisy's reimbursement of the fees and costs AirWare has incurred. The evidence has established **at every stage of this case** that AirWare's accused products do not incorporate any "barrier" that prevents the essential oil molecules on the device from coming into contact with the user's skin:

- The samples that Clerisy and its counsel obtained **before filing suit** clearly do not have a "barrier;"

- In two letters in August 2012 AirWare's counsel notified Clerisy's counsel that AirWare's products do not incorporate a "barrier;"

26

- David Dolezal testified in July 2013 that the devices do not have a "barrier" and that, in fact, the molecules on the devices **do come into contact with the user's skin**;

- Michael Doll echoed Mr. Dolezal's testimony in August 2013, confirming that the devices have no "barrier" and that the molecules of the essential oils come into contact with the user's skin.

Tellingly, at no point during the pendency of this case could Appellees or their counsel point to a structure that satisfied the "barrier" limitation of the '982 Patent. Despite this indisputable evidence, Clerisy refused at every step to dismiss its case and enter into a consent judgment of noninfringement.

Clerisy's pursuit of its frivolous claims directly prejudiced AirWare in at least two ways. First, because Clerisy's counsel sent letters to AirWare's customer, Supervalu, AirWare **directly lost sales of its product**. Second, AirWare was forced to incur substantial attorneys' fees and costs to defend Clerisy's baseless claims. Nothing can bring back the sales that AirWare lost as a result of the letters Clerisy's counsel sent to AirWare's customers. This Court can, however, ameliorate the damages that AirWare has suffered by directing the District Court to condition the dismissal of Clerisy's claims without prejudice on Clerisy's reimbursement of AirWare's attorneys' fees and costs incurred in defending this action.

III.    **The District Court Abused Its Discretion When It Denied AirWare's Motion to Impose Attorneys' Fees and Costs on Clerisy's Counsel Without Properly Considering AirWare's Argument That Clerisy's Infringement Claims Were Frivolous and in Bad Faith**

An award of attorneys' fees and costs against counsel pursuant to 28 U.S.C. § 1927 is warranted when there is a finding of "bad faith or recklessness." *Lahiri*, 606 F.3d at 1219. The District Court denied AirWare's motion for fees under Section 1927 on the grounds that "Plaintiffs' claims were not frivolous, nor was its pursuit of them vexatious or intended to harass." JA-31. This conclusion ignores the undisputed fact that Clerisy and its counsel were unable, **at any stage of this litigation**, to articulate an infringement theory that identified a structure of the accused products that satisfied the "barrier" limitation of the asserted claims. Because the District Court did not properly consider AirWare's argument that Clerisy's claim was frivolous on that basis, the District Court abused its discretion when it denied AirWare's motion.

The **undisputed** facts demonstrate that Clerisy was never able to identify a structure that satisfied the "barrier" limitation of the asserted claims. AirWare's initial claim chart, created after it obtained and reviewed samples of the accused products, did not identify a "barrier" in the product. JA-249–50. Instead, Clerisy's counsel simply stated that "AIR branded products with essential oils are designed and manufactured so that the essential oils do not touch the skin or the inside lining of the nasal passages," without identifying any "barrier." *Id.*

Clerisy's allegations never became more specific. When AirWare's counsel sent two Rule 11 Notice letters to Clerisy, Clerisy's counsel failed to identify a structure that met the "barrier" limitation. JA-270–74. **Even when AirWare requested its fees and costs in the District Court because Clerisy had never been able to identify a structure that satisfied the "barrier" limitation, Clerisy failed to point to a single shred of evidence that it had, in fact, identified a "barrier."** *See* JA-286–91.

This establishes a textbook frivolous patent infringement claim. "When 'the patentee is manifestly unreasonable in assessing infringement, while continuing to assert infringement in court, an inference is proper of **bad faith**, whether grounded in or denominated [sic] wrongful intent, recklessness, or gross negligence.'" *Phonometrics, Inc. v. Westin Hotel Co.*, 350 F.3d 1242, 1246 (Fed. Cir. 2003), *quoting Eltech Sys. Corp. v. PPG Indus.*, 903 F.2d 805, 811 (Fed. Cir. 1990). Although *Phonometrics* was decided in the context of a Section 285 "exceptional case" claim, its analysis of bad faith claims is equally applicable to AirWare's Section 1927 claim. In that case, this Court found that the plaintiff's infringement claim was made in bad faith, in part because Phonometrics had no viable infringement theory, a deficiency it could not even correct on appeal: "Phonometrics never even articulated a viable infringement theory as to Westin. Nor has it done so here." *Id.* at 1247. Like *Phonometrics*, Clerisy in this case has

**never articulated a viable infringement theory**, because it has never identified a structure in the accused products that constitutes a "barrier." Clerisy almost certainly will fail to do so again when it files its Response Brief on this appeal. Accordingly, Clerisy's infringement claim was made in bad faith.

The District Court's opinion suggests that it utterly failed to recognize or properly consider Clerisy's bad faith inability to articulate an infringement theory. The District Court noted AirWare's argument that Clerisy was unable to identify a "barrier," but continued by concluding that "the record is ambiguous with respect to the infringement claims." JA-40. According to the District Court, the absence of a "barrier" in the accused products is not "an unequivocal fact:"

> While Defendants contend that the lack of a barrier in its products is an unequivocal fact, this assertion is based solely on their representation that "molecules" of the essential oil—presumably in a gaseous rather than liquid form—do come into contact with the skin. It is not clear to the Court whether this representation actually establishes the absence of a barrier, as that term has been construed by the Court.

*Id.* This misses the point, for two reasons. **First**, the "representation" the District Court refers to is evidence, in the form of deposition testimony. Furthermore, it is **undisputed evidence**, and clearly establishes that the essential oils are not "prevent[ed] from contacting the skin" of the user, as required by the asserted claims. **Second**, and perhaps most importantly, the District Court ignores the fact that Clerisy was unable throughout the pendency of the litigation to identify an

alleged barrier in the accused products. Notably, not even the District Court could identify a potential barrier, undermining its speculation that there may be a barrier in the accused products.

Clerisy's utter inability to identify a "barrier" in the accused products, and therefore to articulate a viable infringement theory, constitutes bad faith litigation. The District Court's failure to fairly and properly address that fact, and consider AirWare's argument, constitutes and abuse of discretion. *Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1369 (Fed. Cir. 2012) (in Rule 11 case, District Court abused discretion by failing to consider arguments by party seeking sanctions). Accordingly, AirWare respectfully requests that this Court reverse the District Court's denial of Section 1927 sanctions and remand for further consideration.

## CONCLUSION

Based on the arguments and evidence set forth above, AirWare respectfully requests that this Court reverse the District Court's order denying AirWare's motion for the imposition of fees and costs on Clerisy and its Counsel as a condition of the dismissal of Clerisy's infringement claims without prejudice.

Dated:  March 10, 2014                  WINTHROP & WEINSTINE, P.A.


                                        /s/ Paul J. Robbennolt
                                        Devan V. Padmanabhan, #0240126
                                        Paul J. Robbennolt, #0240497
                                        Michelle E. Dawson, #0388610
                                        225 South Sixth Street, Suite 3500
                                        Minneapolis, MN 55402
                                        Telephone: (612) 604-6400
                                        Facsimile: (612) 604-6800
                                        dpadmanabhan@winthrop.com
                                        probbennolt@winthrop.com
                                        mdawson@winthrop.com

                                        *Attorneys for Attorney for Defendant-
                                        Appellants*

8860068v2

## **ADDENDUM**

WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Clerisy Corporation, et al., | ) | CV 12-2110-PHX-PGR |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Airware Holdings, Inc., et al., | ) | |
| | ) | |
| Defendants. | ) | |

Before the Court is Plaintiffs' motion to dismiss all claims and counterclaims without prejudice. (Doc. 109.) Defendants have filed a cross-motion for attorneys' fees and costs. (Doc. 110.) For the reasons set forth herein, the Court will grant Plaintiffs' motion to dismiss and deny Defendants' cross-motion.

## BACKGROUND

Plaintiff Reed Transition Technologies, LLC, owns a patent for an "Apparatus for and Methods of Administering Volatile Substances into an Inhalation Flow Path." Plaintiff Clerisy Corp. manufactures, markets, and distributes Aromahaler® Nasal SoftStrips™ using the patented apparatus. Defendants market, sell, and distribute "AIR" branded nasal products, which, like the Nasal SoftStrips, are infused with essential oils.

Plaintiffs filed a complaint in the Western District of New York alleging that Defendants are infringing the Patent. The case was transferred to the District of Arizona on Defendant's motion. Plaintiffs filed an amended complaint, and Defendants filed an answer and counterclaims.

1    The Court held a claim construction hearing and, on July 23, 2013, issued an order
2    largely adopting the constructions proposed by Plaintiffs. (Doc. 102.)

3    On September 27, 2013, Plaintiffs filed the pending motion to dismiss under Rule
4    41(a)(2). (Doc. 109.) Plaintiffs state that they do not have the financial resources to continue
5    litigating the case. (*Id.*)

6                                    **DISCUSSION**

7    "Federal Rule of Civil Procedure 41(a)(2) allows a plaintiff, pursuant to an order of
8    the court, and subject to any terms and conditions the court deems proper, to dismiss an
9    action without prejudice at any time." *Westlands Water District v. U.S.*, 100 F.3d 94, 96 (9th
10   Cir. 1996) (internal citation omitted). A court "should grant a motion for voluntary dismissal
11   . . . unless a defendant can show that it will suffer some plain legal prejudice as a result."
12   *Smith v. Lenches*, 263 F.3d 972, 975 (9th Cir. 2001).

13   Plaintiffs have executed a covenant not to sue Defendants. (Doc. 109, Ex. A.) They
14   argue that the covenant extinguishes any case or controversy between the parties, so that the
15   Court now lacks subject matter jurisdiction over any of the claims or counterclaims in this
16   action, which therefore must be dismissed. The Court agrees. Under the broad covenant here,
17   the adequacy of which Defendants do not dispute, Plaintiffs have met their burden of
18   showing that they cannot reasonably be expected to sue, thereby mooting the case. *See*
19   *Already, LLC v. Nike*, 133 S. Ct. 721, 726 (2013); *Dow Jones & Co. v. Ablaise Ltd.*, 606 F.3d
20   1338, 1346 (Fed.Cir. 2010).

21   Defendants do not oppose dismissal or contend that they will be prejudiced. However,
22   they ask the Court to condition dismissal on Plaintiffs' reimbursement of Defendants'
23   attorney's fees and costs pursuant to Rule 41(a)(2) or under 28 U.S.C. § 1927, which
24   provides for the imposition of fees and costs against any attorney who "multiplies the
25   proceedings in any case unreasonably and vexatiously." The Court concludes that Defendants
26   are not entitled to attorneys' fees under either Rule 41(a)(2) or § 1927.
27

28

                                        - 2 -

### 1. Rule 41(a)(2)

Rule 41(a)(2) provides that unless a plaintiff files a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment, or the parties stipulate to the dismissal of the action, "[a]n action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R .Civ. P. 41(a)(2). A motion for voluntary dismissal pursuant to Rule 41(a)(2) should be granted unless a defendant can show that it will suffer some plain legal prejudice as a result of the dismissal. *Smith v. Lenches*, 263 F.3d 972, 975 (9th Cir. 2001). As noted, Defendants do not make such a showing.

A court has the discretion to condition a dismissal without prejudice upon the payment of "appropriate costs and attorney fees." *Westlands Water Dist. v. United States*, 100 F.3d 94, 96 (9th Cir. 1996). The payment of fees is not, however, a prerequisite to a Rule 41(a) dismissal. *Stevedoring Servs. of Am. v. Armilla Intern. B. V.,* 889 F.2d 919, 921 (9th Cir. 1989) (explaining that "no circuit court has held that payment of the defendant's costs and attorney fees is a prerequisite to an order granting voluntary dismissal"); *see Westlands*, 100 F.3d at 97 ("Imposition of costs and fees as a condition for dismissing without prejudice is not mandatory.").

In arguing for an award of fees under Rule 41(a)(2), Defendants assert that "in cases where the litigation has proceeded to the point that the defendant has incurred significant fees and costs, the courts ordinarily condition a dismissal without prejudice on the plaintiff's reimbursement of the defendant's fees and costs incurred during the litigation." (Doc. 110 at 8.) In support of this position Defendants rely on *McCants v. Ford Motor Co.*, 781 F.2d 855 (11th Cir. 1986). There, the Eleventh Circuit stated that "[a] plaintiff ordinarily will not be permitted to dismiss an action without prejudice under Rule 41(a)(2) after the defendant has been put to considerable expense in preparing for trial, except on condition that the plaintiff reimburse the defendant for at least a portion of his expenses of litigation." *McCants*, 781 F.2d at 860.

- 3 -

1    Defendants' argument is not persuasive in the light of Ninth Circuit law. In

2 *Heckethorn v. Sunan Corp.*, 992 F.2d 240, 242 (9th Cir. 1993), the court held that

3 "Fed.R.Civ.P. 41(a)(2) in itself is not 'specific statutory authority' for the imposition of

4 sanctions against an attorney." Thus, this Court must have an "independent basis" to impose

5 fees and costs as a condition of voluntary dismissal. *Chavez v. Northland Group*, No. CV-09-

6 2521-PHX-LOA, 2011 WL 317482, at *3 (D.Ariz. February 1, 2011) (citing *Heckethorn,*

7 992 F.2d at 242); *see Chang v. Pomeroy*, No. CIV-S-08-657-FCDS-DAD-PS, 2011 WL

8 618192, at *1 (E.D.Cal. Feb. 10, 2011) (explaining that "a court cannot impose fees and costs

9 as a condition of voluntary dismissal absent some basis other than the mere fact of the

10 plaintiff's request for Rule 41(a)(2).").

11    While the Court agrees with Defendants that it retains the discretion to condition

12 dismissal on an award of attorneys' fees, it finds no basis to do so here. A fee award is

13 particularly inappropriate in this case, given that Plaintiffs' have executed a covenant not to

14 sue. Defendants face no threat of future, duplicative litigation. "The covenant not to sue

15 precludes the possibility of relitigation of this matter, and therefore an award of fees and

16 costs, which is designed to protect defendants from the expense of defending an action again,

17 is not required." *Furminator, Inc. v. Ontel Products Corp.*, 246 F.R.D. 579, 596 (E.D.Mo.

18 2007); see *Gap, Inc. v. Stone Intern. Trading, Inc.*,169 F.R.D. 584, 589 (S.D.N.Y. 1997)

19 ("The Gap's offer of a covenant not to sue obviates the need to reimburse the defendants on

20 this ground, however, since there is no possibility of relitigation."); *see also Colombrito v.*

21 *Kelly*, 764 F.2d 122, 134 (2d Cir. 1985) ("The purpose of such awards is generally to

22 reimburse the defendant for the litigation costs incurred, in view of the risk (often the

23 certainty) faced by the defendant that the same suit will be refiled and will impose

24 duplicative expenses upon him.").

25    The Court will next consider the argument that 28 U.S.C. § 1927 provides a basis for

26 the recovery of Defendants' attorneys' fees.

27

28

- 4 -

1    **2. 28 U.S.C. § 1927**

2          A court may impose sanctions against an attorney under 28 U.S.C. § 1927, which

3    provides that, "Any attorney or other person admitted to conduct cases in any court of the

4    United States or any Territory thereof who so multiplies the proceedings in any case

5    unreasonably and vexatiously may be required by the court to satisfy personally the excess

6    costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

7          Sanctions may be imposed under § 1927 where there is a finding of bad faith or

8    recklessness. *See Lahiri v. Universal Music & Video Distribution Corp.*, 606 F.3d 1216,

9    1219 (9th Cir. 2010); *Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112,

10   1118 (9th Cir. 2000). Bad faith is assessed "under a subjective standard. Knowing or reckless

11   conduct meets this standard." *MGIC Indem. Corp. v. Moore*, 952 F.2d 1120, 1121–22 (9th

12   Cir. 1991). "[T]he term 'vexatious' has been defined as 'lacking justification and intended

13   to harass.'" *Terrebonne, Ltd. of California v. Murray*, 1 F.Supp.2d 1050, 1055

14   (E.D.Cal.,1998) (quoting *Overnite Transp. Co. v. Chicago Ind. Tire Co.*, 697 F.2d 789, 795

15   (7th Cir.1983)). Courts have characterized § 1927 as imposing an "extreme standard, *White*

16   *v. American Airlines, Inc.*, 915 F.2d 1414, 1427 (10th Cir. 1990), which should be "sparingly

17   applied," *F.D.I.C. v. Calhoun*, 34 F.3d 1291, 1297 (5th Cir. 1994).

18         Defendants asserts that Plaintiffs' pursuit of their patent infringement claims was

19   vexatious and unreasonable because "[t]he evidence has established at every stage of this

20   case that AirWare's accused products do not incorporate any 'barrier' that prevents the

21   essential oil molecules on the device from coming into contact with the user's skin."[1] (Doc.

22   110 at 9.) According to Defendants, therefore, Plaintiffs pursued the claims despite knowing

23   that Defendants' product did not infringe the patent. Defendants recount the following events

24

25

26   [1] The patent claimed both a "carrier," defined as "[t]he portion of the vehicle or device
     that carries or provides at least one volatile substance," and a "barrier," "[t]he portion of the
27   vehicle or device that prevents contact between the skin and the volatile substance." (*See*
     Doc. 102 at 5.)

28

- 5 -

1    in support of their argument that Plaintiffs were aware that Defendants' products did not

2    contain a barrier.

3          –   Before filing suit, Plaintiffs and their attorneys obtained samples of Defendant

4    AirWare's products "and should have known then that the products did not have a barrier."

5    (Doc. 110 at 5.)

6          –   On August 10, 2012, two weeks after Plaintiffs filed their complaint, and again on

7    August 24, AirWare's counsel sent Rule 11 notice letters to Plaintiffs' counsel stating that

8    the accused products "do not include a barrier as required in the '982 patent" and demanded

9    that Plaintiffs dismiss the suit. (Doc. 111, Ex's G, H.)

10         –   On July 25, 2013, AirWare's founder, David Dolezal, testified at his deposition

11   that there is no "structure or part of the accused products that prevent the molecules of the

12   essential oils from coming into contact with the inside of the nose" and that molecules of the

13   essential oils do in fact come into contact with the skin. (*Id.*, Ex. B at 71.)

14         –   On August 16, 2013, Michael Doll, AirWare's Rule 30(b)(6) witness, testified that

15   nothing in the accused products prevents the oil molecules from contacting the skin of the

16   user. (*Id.*, Ex. I.)

17         Plaintiffs counter that they have acted reasonably and in good faith because the

18   infringement of their patent by Defendants' products was genuinely in dispute. Plaintiffs

19   contest Defendants' argument that the absence of a barrier in their products was an

20   "unequivocal" fact and known to Plaintiffs from the outset of the case. Plaintiffs assert that

21   the following facts support their position.

22         –   Before the lawsuit was filed, AirWare's CEO, Jeffrey Rassás, represented to

23   Plaintiff Clerisy's CEO and President, Dr. Mary Maida, that the Accused Products were

24   designed and manufactured so that the essential oils on the Accused Products did not touch

25   the skin or inside lining of the nose. (*See* Doc. 114.)

26         –   In the parties' Joint Case Management Report, filed on January 14, 2013,

27   Defendants represented that "whether Defendants are directly and/or inducing and/or

28

- 6 -

1   contributing to the infringement of at least one valid claim of the '982 Patent" was

2   "genuinely in dispute." (Doc. 71 at 11.) In the report Plaintiffs set forth their position with

3   respect to the presence of a barrier in Defendants' products, recounting the information

4   received from Mr. Rasáss:

> Airware's CEO, Jeffrey Rassás, confirmed to Clerisy's President and CEO, Dr. Mary Maida, before this lawsuit was filed that AirWare's products were specifically designed and manufactured so that essential oils do not touch the skin or the inside lining of the nose. Mr. Rassás acknowledged that when AirWare was designing its infused products, there was a concern about the essential oils touching the inside of the nose, due to irritation of the skin. Because of this concern, Mr. Rassás stated that AirWare's products were designed and manufactured so that there are no essential oils on the ring that touches the inside of the nose, and that the essential oils in the products do not touch the skin in any way.

11   (*Id.* at 5.) Defendants generally denied infringement but did not respond to this allegation

12   specifically. (*Id.* at 8.)

13         −   The Court's claims construction order rejected Defendants' narrow construction

14   of the term barrier, concluding that the patent did not require the presence of "distinct"

15   barrier and carrier layers. (Doc. 102 at 7–9.)

16         −   It was only after the order was issued that Defendants offered their argument that

17   molecules of the essential oils come into contact with the skin.

18         −   Defendants have offered no technical documents in support of the argument that

19   their products do not include a barrier.

20         −   Although they now assert that it was unequivocal that their products did not

21   include a barrier, Defendants never filed a motion for summary judgment of non-

22   infringement.

23         −   In September 2013, when the parties discussed a mutual dismissal of all claims and

24   counterclaims, Defendants refused to execute an affidavit stating: "When Airware's infused

25   products . . . are placed in a user's nasal passage, the essential oils contained on such infused

26   products come into direct contact with the inside lining of the user's nasal passage." (Doc.

27   114, ¶¶18–20; Ex. B.)

28

- 7 -

1    Given this record, the Court cannot conclude that Plaintiffs' attorneys pursued their

2    infringement claims recklessly or in bad faith. Plaintiffs' claims were not frivolous, nor was

3    its pursuit of them vexatious or intended to harass. *See In re Keegan Mgmt. Co., Secs. Litig.*,

4    78 F.3d 431, 436 (9th Cir. 1996); *Seirus Innovative Accessories, Inc. v. Cabela's, Inc.*, No.

5    09-CV-102-H (WMC), 2011 WL 10976624, at *4 (S.D.Cal. Aug. 29, 2011). Defendants'

6    allegations of bad faith are based on their contention that Plaintiffs pursued their

7    infringement claims despite knowing the claims were without merit due to the lack of a

8    barrier in Defendants' products. However, at this point there has been no determination

9    concerning the merits of Plaintiffs' claims; nor would a finding that the claims lacked merit

10   be sufficient for sanctions under § 1927 without a finding of subjective bad faith. *Id.*; *see*

11   *McMahan v. Toto*, 256 F.3d 1120, 1129 (11th Cir. 2001) ("Something more than a lack of

12   merit is required for § 1927 sanctions or they would be due in every case.").

13   In any event, the record is ambiguous with respect to the infringement claims. While

14   Defendants contend that the lack of a barrier in its products is an unequivocal fact, this

15   assertion is based solely on their representation that "molecules" of the essential

16   oil—presumably in a gaseous rather than liquid form—do come into contact with the skin.

17   It is not clear to the Court whether this representation actually establishes the absence of a

18   barrier, as that term has been construed by the Court.

19   The Court concludes that Plaintiffs' attorneys have not pursued their claims in bad

20   faith or multiplied the proceedings unreasonably and vexatiously. Therefore, sanctions are

21   not warranted under § 1927.

22                                   **CONCLUSION**

23   For the reasons set forth above, this matter will be dismissed without prejudice.

24   Defendant's cross-motion for attorneys' fees is denied.

25   Accordingly,

26   IT IS HEREBY ORDERED GRANTING Plaintiffs' motion to dismiss (Doc. 109).

27   The case is dismissed without prejudice.

28

- 8 -

1        IT IS FURTHER ORDERED DENYING Defendants' cross-motion for attorneys'

2  fees (Doc. 110).

3        IT IS FURTHER ORDERED DENYING as moot Defendants' motion to compel

4  responses (Doc. 95), Plaintiffs' motion to compel (Doc. 97), Plaintiff's motion for a

5  protective order (Doc. 107), and Plaintiffs' motion to file a surreply (Doc. 117).

6        IT IS FURTHER ORDERED that the Clerk of Court shall enter judgment

7  accordingly.

8        DATED this 3rd day of December, 2013.

9

10

11                       Paul G. Rosenblatt
                            United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 9 -

(12) **United States Patent**
Reed, Jr.

(10) Patent No.: **US 6,295,982 B1**
(45) **Date of Patent:** **Oct. 2, 2001**

(54) **APPARATUS FOR AND METHODS OF ADMINISTERING VOLATILE SUBSTANCES INTO AN INHALATION FLOW PATH**

(76) Inventor: **Fred Dewitt Reed, Jr.**, 8395 N Stoney Mountain Way, Flagstaff, AZ (US) 06001

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **09/355,147**

(22) PCT Filed: **Jul. 1, 1998**

(86) PCT No.: **PCT/US98/14092**

§ 371 Date: **Jul. 23, 1999**

§ 102(e) Date: **Jul. 23, 1999**

(87) PCT Pub. No.: **WO00/01437**

PCT Pub. Date: **Jan. 13, 2000**

(51) Int. Cl.[7] ....................................................... **A61F 5/08**
(52) U.S. Cl. ...................... **128/200.24**; 606/199; 424/447
(58) Field of Search ......................... 128/200.24, 207.14, 128/893, 894, 888, 889; 606/199, 234, 236; 604/306; 602/58, 41–57, 59; 424/445, 446, 447, 449

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,899,739 | * | 2/1990 | Konishi .................................. 128/156 |
| 5,706,800 | * | 1/1998 | Cronk et al. .................... 128/200.24 |
| 5,890,486 | * | 4/1999 | Mitra et al. ..................... 128/200.24 |
| 6,090,403 | * | 7/2000 | Block et al. .......................... 424/447 |

* cited by examiner

*Primary Examiner*—John G. Weiss
*Assistant Examiner*—Mital Patel
(74) *Attorney, Agent, or Firm*—Parsons & Goltry; Robert A. Parsons; Michael W. Goltry

(57) **ABSTRACT**

A method of introducing a vapor (**41**) of a volatile substance into an inhalation flow path (**24, 25**) of a respiratory organ (**22, 23**), the method comprising the steps of providing a carrier (**31, 51, 51'**) having a volatile substance and engaging the carrier (**31, 51, 51'**) at the inhalation flow path (**24, 25**) of the respiratory organ (**22, 23**).

**17 Claims, 5 Drawing Sheets**





FIG. 2

FIG. 3

FIG. 1

Case: 14-1211 CASE PARTICIPANTS ONLY Document: 21 Page: 54 Filed: 03/11/2014



FIG. 6

FIG. 8

FIG. 7

FIG. 4

FIG. 5

Case: 14-1211 Case: 14-1211 PARTICIPANTS ONLY Document: 55 Page: 55 Filed: 03/11/2014



*FIG. 9*

*FIG. 10*

*FIG. 11*

*FIG. 13*

*FIG. 12*

*FIG. 14*

Case: 14-1211 Case: 14-1211 Document: 22 Page: 56 Filed: 03/11/2014



FIG. 17

FIG. 16

FIG. 15



FIG. 18

FIG. 19

FIG. 20

FIG. 21

FIG. 22

**1**

## APPARATUS FOR AND METHODS OF ADMINISTERING VOLATILE SUBSTANCES INTO AN INHALATION FLOW PATH

### TECHNICAL FIELD

This invention relates generally to the field of aromatherapy and, more particularly, to vehicles for and methods of introducing a vapor of one or more volatile substances into an inhalation flow path.

### BACKGROUND ART

Aromatherapy refers generally to introducing the vapor of one or more volatile substances into an inhalation flow path for inhalation into the lungs or respiratory tract. Volatile substances used in aromatherapy applications normally comprise essential volatile oils provided from, for instance, flowers, herbs and other selected plant life, fruits, etc. Because the vapor of these and other potential varieties of volatile essential oils prove to provide users with beneficial physiological and psychological benefits, aromatherapy has become increasingly popular throughout the world.

To this end, items such as pillows, earrings and other forms of jewelry, diffusers, steam vaporizers, candles, masks, soaps, ointments and salves have been devised as vehicles for containing volatile substances and for providing users with the vapor from the volatile substances. Although exemplary, these and other known vehicles for introducing the vapor from one or more volatile substances into an inhalation flow path for inhalation into the respiratory tract are obtrusive, not suitable for use except in a designated area, objectionable to people other than the user, and/or require specialized apparatus.

### DISCLOSURE OF THE INVENTION

It would be highly advantageous, therefore, to remedy the foregoing and other deficiencies inherent in the prior art.

Accordingly, it is an object of the present invention to provide new and improved vehicles for and methods of introducing a vapor of one or more volatile substances into an inhalation flow path.

Another object of the present invention is to provide new and improved vehicles for introducing a vapor of one or more volatile substances into an inhalation flow path that are easy to construct.

And another object of the present invention is to provide new and improved vehicles for introducing a vapor of one or more volatile substances into an inhalation flow path that are inexpensive.

Still another object of the present invention is to provide new and improved vehicles for introducing a vapor of one or more volatile substances into an inhalation flow path that are unobtrusive during use.

Yet another object of the present invention is the provision of providing users with convenient vehicles for introducing a vapor of one or more volatile substances into an inhalation flow path that may be easily transported and used at any desired moment.

Yet still another object of the present invention is to provide a new and improved method of introducing a vapor of one or more volatile substances into an inhalation flow path that is easy to implement.

A further object of the present invention is to provide new and improved vehicles for and methods of introducing a vapor of one or more volatile substances into an inhalation flow path that are highly efficient.

**2**

### BRIEF DESCRIPTION OF THE DRAWINGS

The foregoing and further and more specific objects and advantages of the instant invention will become readily apparent to those skilled in the art from the following detailed description of a preferred embodiment thereof, taken in conjunction with the drawings, in which:

FIG. 1 is a perspective view of an embodiment of a vehicle for introducing a vapor of one or more volatile substances into an inhalation flow path, the vehicle shown as it would appear worn by a user, in accordance with the present invention;

FIG. 2 is an exploded perspective view of the vehicle of FIG. 1;

FIG. 3 is an exploded side elevational view of the vehicle of FIG. 1;

FIG. 4 is a perspective view of another embodiment of a vehicle for introducing a vapor of one or more volatile substances into an inhalation flow path, the vehicle shown as it would appear worn by a user, in accordance with the present invention;

FIG. 5 is a side elevational view of the vehicle of FIG. 4 shown as it would appear worn by the user;

FIG. 6 is an exploded perspective view of the vehicle of FIG. 4;

FIG. 7 is a side elevational view of the vehicle of FIG. 4;

FIG. 8 is a perspective view of yet another embodiment of a vehicle for introducing a vapor of one or more volatile substances into an inhalation flow path, in accordance with the present invention;

FIG. 9 is an exploded perspective view of an assembly for providing the vehicle of FIG. 1 with one or more volatile substances, in accordance with the present invention;

FIG. 10 is a top elevational view of the assembly of FIG. 9;

FIG. 11 is a vertical sectional view of the vehicle of FIG. 9;

FIG. 12 is an exploded perspective view of another assembly for providing the vehicle of FIG. 1 with one or more volatile substances, in accordance with the present invention;

FIG. 13 is a vertical sectional view of the vehicle of FIG. 12;

FIG. 14 is a perspective view of a receptacle of the assembly of FIGS. 12 and 13 and a macrocapsule contained by the receptacle;

FIG. 15 is a perspective view of yet still another embodiment of a vehicle for introducing a vapor of one or more volatile substances into an inhalation flow path, in accordance with the present invention;

FIG. 16 is a vertical sectional view of the vehicle of FIG. 15;

FIG. 17 is a perspective view of a container housing a plurality of vehicles carried by a roll of sheet material and a plurality of capsules each containing one or more volatile substances, in accordance with the present invention; and

FIGS. 18 through 22 illustrate a sequence of steps of providing the vehicles of FIG. 18 with one or more volatile substances from one or more of a plurality of capsules and for introducing a vapor from one or more of the volatile substances into an inhalation flow path, in accordance with the present invention.

### BEST MODES FOR CARRYING OUT THE INVENTION

The present invention provides, among other things, improved vehicles for and methods of introducing a vapor of

US 6,295,982 B1

3

one or more volatile substances into an inhalation flow path of a respiratory organ. Ensuing embodiments of the invention prove exemplary for aromatherapy application that are highly efficient, unobtrusive, easy to implement and require no specialized equipment or apparatus.

Turning now to the drawings in which like reference characters indicate corresponding elements throughout the several views, attention is first directed to FIG. 1 illustrating a perspective view of an embodiment of a vehicle **20** for introducing a vapor of one or more volatile substances into an inhalation flow path of a user **21** as user **21** breathes. To breathe is to draw air into and expel it from the lungs or respiratory tract by way of one or more of the external respiratory organs including mouth **22** and nose **23**. As air is drawn into and expelled from the lungs or respiratory tract, it is to be generally understood that the entrance of mouth **22** and entrances of nose **23** as defined by the external openings into each of the nasal passages define inhalation flow paths generally designated at **24** and **25**, respectively.

Turning to FIGS. **2** and **3**, vehicle **20** is generally comprised of a series of layers including a carrier generally designated at **31**, a barrier **32**, an adhesive backing **33** and a cover **34** for protecting adhesive backing **33** prior to use. Carrier **31** comprises, in this specific example, a substantially disk-shaped member constructed of a natural or synthetic sponge-like or substantially absorbent material. Barrier **31** carries or is otherwise impregnated with one or more volatile substances. Because the present invention is particularly adapted for use in aromatherapy application, each of the one or more volatile substances may comprise an essential oil of one or more selected herbs, flowers and other plant life, fruits, etc. Barrier **32** is fixed to barrier **31** with, for instance, a suitable adhesive and is constructed of a metallic foil, wax paper, thin plastic or other material substantially impermeable to the one or more volatile substances carried by barrier **31**. Adhesive backing **33** is carried by barrier **32** in the form of a layer with cover **34** removably carried thereon.

In operation, cover **34** may be grasp, such as by a human hand, and removed to expose adhesive backing **33**. so exposed, user **21** may then engage adhesive backing **33** to his or her body proximate one or more of inhalation flow paths **24** and **25** such as, as shown in FIG. **1**, adjacent the external openings of the nasal passages of nose **23**. So installed, the volatility of the one or more volatile substances carried by barrier **31** will naturally emit a vapor generally designated at **41**. So positioned adjacent the external openings of the nasal passages of nose **23**, as user breaths into and out of nose **23**, vapor **41** will introduce into inhalation path **25** permitting vapor **41** to travel into the lungs or respiratory tract as user **21** breathes thus providing user **21** with the associated beneficial effects of aromatherapy.

Barrier **32** is important for preventing the one or more volatile substances carried by barrier **31** from seeping into the adhesive layer which may not only compromise adhesive backing **33**, but also cause the one or more volatile substances to contact the skin which, in some instances, may result in unwanted skin irritation. Further, because vehicle **20** is preferably worn against the skin adjacent or within one or more of inhalation paths **24** and **25**, heat from the user **21** body transfers to barrier **31** which increases the volatility of the one or more volatile substances desirably enhancing the emission of vapor.

Turning now to FIG. **4**, illustrated is a perspective view of another embodiment of a vehicle **50** for introducing a vapor of one or more volatile substances into one or more of

4

inhalation flow paths **24** and **25** of user **21**. Referring to FIGS. **6** and **7**, vehicle **50** is comprised of a series of layers including a carrier generally designated at **51**, a clamp **52** and a barrier **53**. Carrier **51** comprises, in this specific example, a substantially elongated member **54** constructed of a natural or synthetic sponge-like or substantially absorbent material. Like barrier **31**, barrier **53** carries or is otherwise impregnated with one or more volatile substances. Barrier **53** captures clamp **52** against barrier **53** and is fixed to member **54** with, for instance, a suitable adhesive. Barrier **53**, of which is provided in the form of a layer covering barrier **53**, is preferably constructed of a metallic foil, wax paper, thin plastic or other material substantially impermeable to the one or more volatile substances carried by barrier **53**. In this specific example, clamp **52** comprises a deformable member **55** constructed of, for instance, a deformable or malleable metal.

In operation, vehicle **50** may be grasp, such as by a human hand, positioned and deformed against septum **56** to clamp vehicle **50** against septum **56** of nose **23** in inhalation flow path **25** as shown substantially in FIGS. **4** and **5**. Deformable member **55** thus permits the clamping of vehicle **50** against not only septum **56**, but also to the external sidewalls **57** and **58** of nose bounding the external openings into the nasal passages if so desired. So installed, the volatility of the one or more volatile substances carried by barrier **53** will naturally emit a vapor which will introduce into inhalation flow path **25** to be carried into the lungs or respiratory tract as user **21** breathes. Like barrier **32**, barrier **53** is important for preventing the one or more volatile substances carried by barrier **53** from contacting the skin or nasal membranes which, in some instances, may result in unwanted skin and/or nasal membrane irritation.

Referring now to FIG. **8**, illustrated is a perspective view of yet another embodiment of a vehicle **60** for introducing a vapor of one or more volatile substances into an inhalation flow path, in accordance with the present invention. Vehicle **60** is substantially identical in structure and function to vehicle **50**. Therefore, reference characters used to describe vehicle **50** will also be used to describe vehicle **60** to the extent of the common structural features. However, in the interests of clarity, common reference characters used to describe vehicle **50** will include a prime ("'") symbol.

In this regard, and like vehicle **50**, vehicle **60** includes carrier **51'**, barrier **53'** and a clamp **61** captured between carrier **51'** and barrier **53'**. In this embodiment, clamp **61** comprises a substantially U-shaped clip constructed of a selected metal, plastic or other material having shape memory. Clamp **61** permits the clipping engagement of vehicle **50** against, for instance, one of at least the septum and external sidewalls bounding the external openings of the nasal passages of the nose of a user.

Carriers **31**, **51** and **51'** may be provided or otherwise impregnated with one or more volatile substances in a variety of manners, not the least of which may include impregnation during manufacture. As an alternative, vehicle **20**, like vehicles **50** and **60**, may be housed in one of plurality of assemblages suitable for allowing the selective and desired impregnation of carrier **31** as desired prior to use.

With this in mind, attention is first directed to FIG. **9** illustrating an exploded perspective view of an assembly **70** for providing vehicle **20** with one or more volatile substances, in accordance with the present invention. With additional reference to FIG. **11** illustrating a vertical sectional view of assembly **70**, assembly **70** includes a recep-

**ADD-17**

tacle **71**, a rupturable or tearable layer **72** and a cover **73** (also shown in FIG. **10**). Regarding FIG. **11**, receptacle **71** includes a continuous sidewall **74** having a closed end **75** and an open end **76** with a continuous flange **77** extending outwardly from open end **76**. Continuous sidewall **74** and closed end **75** cooperate to bound a chamber **78** in which is contained one or more volatile substances **79**.

Preferably constructed a selected metal foil, wax paper or other similar material that may be easily torn or ruptured, rupturable layer **72** is fixed, such as with a selected adhesive, to continuous flange **77** occluding open end **76** and enclosing chamber **78**. Cover **73**, of which may be constructed of paper, plastic or other selected material, is fixed, such as with a selected adhesive, to rupturable layer **72** capturing vehicle **20** therebetween proximate open end **76**.

With receptacle **71** preferably constructed of a thin plastic or other deformable material, assembly **70** may be grasp, such as with a human hand, and at least one of closed end **75** and cover **73** compressed inwardly to tear or rupture rupturable layer **72** at open end **76** to expose vehicle **20** to the one or more volatile substances carried in chamber **78** to permit the one or more volatile substances to contact and impregnate carrier **31**. So impregnated, cover **73** may be grasp, such as with a human hand, and peeled away to allow the user to remove vehicle **20** from assembly **70**. Upon removal, the user may then install vehicle **20** as previously discussed for normal operation.

With attention directed FIG. **12**, illustrated is an exploded perspective view of another assembly **90** for providing vehicle **20** with one or more volatile substances, in accordance with the present invention. With additional reference to FIG. **13** illustrating a vertical sectional view of assembly **90**, assembly **90** includes a receptacle **91** and a cover **92**. Regarding FIG. **13**, receptacle **91** includes a continuous sidewall **94** having a closed end **95** and an open end **96** with a continuous flange **97** extending outwardly from open end **96**. Continuous sidewall **94** and closed end **95** cooperate to bound a chamber **98** in which is contained microcapsules **99** each containing one or more volatile substances. Cover **92**, of which may be constructed of paper, plastic or other selected material, is fixed, such as with a selected adhesive, to continuous flange **97** occluding open end **96** enclosing chamber **98** to contain microcapsules **99** and vehicle **20** therein.

With receptacle **91** preferably constructed of a thin plastic or other deformable material, assembly **90** may be grasp, such as with a human hand, and at least one of closed end **95** and cover **92** compressed inwardly to rupture microcapsules **99** to release and expose carrier **31** of vehicle **20** to the one or more volatile substances contained therein thereby permitting the one or more volatile substances to contact and impregnate carrier **31**. So impregnated, cover **92** may be grasp, such as with a human hand, and peeled away to allow the user to remove vehicle **20** from assembly **90**. Upon removal, the user may then install vehicle **20** as previously discussed for normal operation.

Microcapsules **99** are each of a conventional type comprising a closed outer wall containing one or more volatile substances therein. In accordance with conventional microcapsules, the closed outer wall may be constructed of cellulose or other material that may be easily ruptured upon compression. Furthermore, although chamber **98** of assembly **90** is shown containing microcapsules, one or more macrocapsules, such as macrocapsule **100**, of substantially identical yet larger construction to each of microcapsules **99** and containing one or more volatile substances may be used if so desired.

Turning now to FIGS. **15** and **16**, illustrated is yet still another embodiment of a vehicle **110** for introducing a vapor of one or more volatile substances into an inhalation flow path, in accordance with the present invention. Vehicle **110** is comprised of a series of layers including a carrier generally designated at **111**, a barrier **112** fixed to carrier **111** such as with a suitable adhesive, and an adhesive backing **113** carried by barrier **112** in the form of a layer. Carrier **111** comprises, in this specific example, a pair of members **114** and **115** sandwiched together with a suitable adhesive and each constructed of a natural or synthetic sponge-like or substantially absorbent material. Captured between members **114** and **115** is a macrocapsule **116** containing one or more volatile substances, macrocapsule **116** being of substantially similar construction to macrocapsule **100** discussed previously in combination with FIG. **14**.

In operation, vehicle **110** may be grasp, such as with a human hand, and compressed to rupture macrocapsule **116** to release and permit the one or more volatile substances contained therein to impregnate members **114** and **115**. Barrier **112**, of which is provided in the form of a layer covering, in this specific example, member **115**, is preferably constructed of a metallic foil, wax paper, thin plastic or other material substantially impermeable to the one or more volatile substances impregnated into and through each of the members **114** and **115**. After release of the one or more volatile substances into and through members **114** and **115**, vehicle **110** may be adhesively engaged to a user for aromatherapy in much the same fashion as vehicle **20** discussed previously.

Rather than, or in addition to, adhesive backing **113**, vehicle **110** may be provided with one of previously discussed clamp **52** and clamp **61** if so desired for permitting clamping engagement of vehicle **110** to a user if so desired. Furthermore, and although not shown in FIGS. **15** and **16**, vehicle **110** may be provided with a removable cover to protect adhesive backing **113** prior to use. Additionally, microcapsules may be used in lieu of macrocapsule **116** if so desired.

In accordance with preferred teachings, it may be desirable to provide users with a convenient and portable packaging assembly that may be carried, such as in a pocket, purse, etc., and employed when desired for aromatherapy. To this end, and with attention directed to FIG. **17**, illustrated is a perspective view of a packaging assembly **119**. In this specific embodiment, packaging assembly **119** includes a container **120** housing a plurality of vehicles **20** first set forth in FIG. **1**. The vehicles **20** are carried by, such as with a suitable adhesive, a roll **121** of sheet material **122** in a first compartment **123**. Further included is a plurality of capsules **124** each containing one or more volatile substances carried in a second compartment **125** of container **120**. Each one of the capsules **124** is of substantially identical construction to each of macrocapsules **100** and **116** discussed previously, further details of which will not be further addressed.

In operation, one of vehicles **20** may be grasp, such as with a human hand, and removed from the sheet material **122** as shown in FIG. **18**. One of capsules **124** may then be grasp such as with a human hand as shown in FIG. **19** and, while being held adjacent member **40** of vehicle as shown in FIG. **20**, squeezed to an extent sufficient to rupture capsule **124** to dispense the one or more volatile substances **130** contained therein onto member **40** to permit the one or more volatile substances to impregnate into and through member **40**. After impregnation, cover **34** may be peeled away to expose adhesive backing **33** as shown in FIG. **21** and vehicle **20** then adhesively secured to user **21** for aromatherapy in

7                                                           8

the manner previously discussed in connection with FIG. 1. Regarding FIG. 22, shown are a pair of vehicles 20 having been prepared in accordance with the method set forth in FIGS. 18–21 and installed with user 21 in spaced relation adjacent the external openings of the nasal passages of nose 23 at inhalation flow path 25. Although the method set forth in FIGS. 18–22 have been discussed in combination with vehicle 20, the method may also be readily implemented with vehicles 50 and 60 if desired.

In summary, the present invention provides exemplary vehicles and methodologies for introducing a vapor of one or more volatile substances into an inhalation flow path of a respiratory organ in aromatherapy application. Foregoing embodiments of the present invention are easy to construct, and provide a variety of means for providing or otherwise impregnating a selected vehicle with one or more volatile substances. In this regard, the various embodiments are not only convenient, but also permit users to easily transport aromatherapy vehicles for selective and desired use as needed without having to employ specialized equipment.

Various changes and modifications to the embodiments herein chosen for purposes of illustration will readily occur to those skilled in the art. To the extent that such modifications and variations do not depart from the spirit of the invention, they are intended to be included within the scope thereof which is assessed only by a fair interpretation of the following claims.

Having fully described the invention in such clear and concise terms as to enable those skilled in the art to understand and practice the same, the invention claimed is:

1. A method of introducing a vapor of at least one volatile substance into an inhalation flow path of a respiratory organ, the method comprising the steps of:

    providing a carrier conformable to a surface of skin;

    providing the carrier with at least one volatile substance;

    providing a barrier coupled to a surface of the carrier, the barrier being substantially impermeable to the one or more volatile substances carried by the carrier; and

    engaging the carrier to the surface of skin proximate an inhalation flow path of a respiratory organ with the barrier adapted to be interposed between the carrier and the skin to prevent the one or more volatile substances from contacting the skin.

2. The method of claim 1, wherein the step of providing a carrier further includes the steps of providing a substantially absorbent member.

3. The method of claim 1, wherein the step of providing the carrier with at least one volatile substance further includes the step of impregnating the carrier with at least one volatile substance.

4. The method of claim 3, wherein the step of impregnating the carrier with at least one volatile substance further includes the steps of:

    providing a rupturable capsule containing at least one volatile substance;

    embedding the rupturable capsule in the carrier; and

    rupturing the rupturable capsule.

5. The method of claim 3, wherein the step of impregnating the carrier with at least one volatile substance further

includes the step of dispensing one or more volatile substance onto the carrier.

6. The method of claim 1, wherein the step of engaging the carrier proximate an inhalation flow path further includes the step of adhesively engaging the carrier proximate the inhalation flow path of the respiratory organ.

7. The method of claim 1, wherein the step of engaging the carrier proximate an inhalation flow path further includes the step clamping the carrier to the respiratory organ proximate the inhalation flow path.

8. The method of claim 7, wherein the step of clamping the carrier to the respiratory organ proximate the inhalation flow path further includes the steps of:

    providing a clamp;

    coupling the clamp to the carrier; and

    engaging the clamp to the respiratory organ.

9. The method of claim 8, wherein the step of coupling the clamp to the carrier further includes the step of adhesively coupling the clamp to the carrier.

10. The method of claim 8, wherein the steps of providing a clamp and engaging the clamp to the respiratory organ further includes the steps of:

    providing a deformable element; and

    deforming the deformable element against the respiratory organ.

11. A vehicle for introducing a vapor of one at least one volatile substance into an inhalation flow path of a respiratory organ, the vehicle comprising:

    a carrier conformable to a surface of skin;

    at least one volatile substance carried by the carrier;

    a barrier coupled to a surface of the carrier, the barrier being substantially impermeable to the at least one volatile substances carried by the carrier; and

    means for engaging the carrier is a surface of skin proximate an inhalation flow path of the respiratory organ with the barrier adapted to be interposed between the carrier and the surface of skin to prevent the at least one volatile substances from contacting the skin.

12. The vehicle of claim 11, wherein the carrier includes a substantially absorbent member.

13. The vehicle of claim 11, wherein the means includes adhesive carried by the barrier, the barrier dividing the carrier from the adhesive backing.

14. The vehicle of claim 11, further including a barrier dividing the carrier from the adhesive backing, the barrier being substantially impermeable to the one or more volatile substances carried by the carrier.

15. The vehicle of claim 11, wherein the means includes a deformable element deformably engagable against the respiratory organ.

16. The vehicle of claim 11, wherein the means includes a clip clippingly engagable against the respiratory organ.

17. The vehicle of claim 11, wherein the at least one volatile substance carried by the carrier is carried in a rupturable capsule embedded in the carrier.

*    *    *    *    *

**ADD-19**

UNITED STATES PATENT AND TRADEMARK OFFICE

# CERTIFICATE OF CORRECTION

PATENT NO. : 6,295,982 B1                                                                Page 1 of 1
DATED         : October 2, 2001
INVENTOR(S) : Fred Dewitt Reed, Jr.

It is certified that error appears in the above-identified patent and that said Letters Patent is
hereby corrected as shown below:

Column 8,
Line 37, replace "is" with -- to --.

Signed and Sealed this

Twentieth Day of August, 2002

Attest:

JAMES E. ROGAN
Director of the United States Patent and Trademark Office

Attesting Officer

**ADD-20**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify, that on March 11, 2014, a true and correct copy of the Corrected Brief of Defendant-Appellants AirWare Holdings, Inc. and Crown Dynamics Corp. was caused to be served on the below-listed counsel by CM/ECF and electronic mail (by agreement of counsel):

Frederick JM Price
Bond Schoeneck & King PLLC - Syracuse, NY
1 Lincoln Ctr., Ste. 1800
Syracuse, NY 13202-1355
315-218-8000
Fax: 315-218-8100
Email: fjprice@bsk.com

Jeremy P Oczek
Katie I. Reid
Bond Schoeneck & King PLLC - Buffalo, NY
Key Center
40 Fountain Plz., Ste. 600
Buffalo, NY 14202-2200
716-566-2800
Fax: 716-566-2808
Email: jpoczek@bsk.com
Email: reidk@bsk.com

Dated:  March 11, 2014                    W\textsc{inthrop} & W\textsc{einstine}, P.A.


                                          /s/ Paul J. Robbennolt
                                          Devan V. Padmanabhan, #0240126
                                          Paul J. Robbennolt, #0240497
                                          Michelle E. Dawson, #0388610
                                          225 South Sixth Street, Suite 3500
                                          Minneapolis, MN 55402
                                          Telephone: (612) 604-6400
                                          Facsimile: (612) 604-6800
                                          dpadmanabhan@winthrop.com
                                          probbennolt@winthrop.com
                                          mdawson@winthrop.com

                                          *Attorneys for Attorney for Defendant-
                                          Appellants*

# <u>CERTIFICATE OF COMPLIANCE</u>

1.  This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B). The brief contains 6,787 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared in a proportionally spaced typeface using MS Word in a 14 point Times New Roman font.

Dated: March 10, 2014                    WINTHROP & WEINSTINE, P.A.


                                         /s/ Paul J. Robbennolt
                                         Devan V. Padmanabhan, #0240126
                                         Paul J. Robbennolt, #0240497
                                         Michelle E. Dawson, #0388610
                                         225 South Sixth Street, Suite 3500
                                         Minneapolis, MN 55402
                                         Telephone: (612) 604-6400
                                         Facsimile: (612) 604-6800
                                         dpadmanabhan@winthrop.com
                                         probbennolt@winthrop.com
                                         mdawson@winthrop.com

                                         *Attorneys for Attorney for Defendant-Appellants*