Appeal No. 2014-1211

# United States Court of Appeals

*for the*

# Federal Circuit

CLERISY CORPORATION, REED TRANSITION TECHNOLOGIES LLC,

*Plaintiffs-Appellees,*

– v. –

AIRWARE HOLDINGS INCORPORATED, DBA Airware Labs,
CROWN DYNAMICS CORPORATION,

*Defendants-Appellants.*

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF ARIZONA IN CASE NO. 2:12-CV-02110-PGR,
PAUL G. ROSENBLATT, SENIOR JUDGE

## BRIEF FOR PLAINTIFFS-APPELLEES

JEREMY P. OCZEK
BOND SCHOENECK & KING PLLC
40 Fountain Plaza, Suite 600
Buffalo, New York 14202
(716) 566-2800

FREDERICK J. M. PRICE
KATE I. REID
BOND SCHOENECK & KING PLLC
One Lincoln Center
110 West Fayette Street
Syracuse, New York 13202
(315) 218-8000

*Attorneys for Plaintiffs-Appellees*

FORM 9. Certificate of Interest

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Clerisy Corporation and Reed Transition Technologies, LLC

v.

Airware Holdings Incorporated (d/b/a Airware Labs) and Crown Dynamics Corp.

No. 14-1211

# CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)

Appellees certifies the following (use "None" if applicable; use extra sheets if necessary):

1.      The full name of every party or amicus represented by me is:

Clerisy Corporation and Reed Transition Technologies, LLC

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

None

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

Neither Appellee has a parent company, and no publicly held corporation owns any part of either Appellee.

4. ☒   The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Bond, Schoeneck & King, PLLC - Jeremy P. Oczek, Frederick J.M. Price, Blaine T. Bettinger, Edward P. Hourihan, Kate I. Reid

Weiss & Moy, P.C. - Kenneth Michael Motolenich-Salas

01/22/2014
Date

s/Frederick J.M. Price
Signature of counsel

Frederick J.M. Price
Printed name of counsel

Please Note: All questions must be answered

cc: _____

124

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ..........................................................................i

TABLE OF AUTHORITIES ...........................................................................iv

STATEMENT OF RELATED CASES ...............................................................1

COUNTER-STATEMENT OF THE ISSUES ........................................................2

STATEMENT OF THE CASE .........................................................................3

STATEMENT OF THE FACTS ........................................................................6

A. The '982 Patent ................................................................................6

B. The Complaint Was Filed In Good Faith After a Thorough and Diligent Pre-Filing Investigation ......................................................................7

C. AirWare Represented that the Infused Products Were Designed and Manufactured So that the Essential Oils on the Products Do Not Touch the Skin or Inside Lining of the Nose, Thus Having a "Barrier" in Accordance with the '982 Patent ..................................................................9

D. AirWare's Litigation Strategy and Conduct ......................................11

E. The District Court's Claim Construction Order Rejected *All* of the Claim Constructions Advocated by AirWare .................................................14

F. The Infringement by AirWare's Infused Products Was Genuinely in Dispute Throughout this Case ..........................................................15

G. Disposition Below ...........................................................................19

SUMMARY OF THE ARGUMENT ..................................................................22

ARGUMENT ...............................................................................................25

POINT I : THE DISTRICT COURT CORRECTLY DECLINED TO CONDITION DISMISSAL PURSUANT TO FEDERAL RULE 41(a)(2) ON AN AWARD OF ATTORNEYS' FEES OR COSTS ....................................25

# TABLE OF CONTENTS
## (continued)

A.    Standard of Review ............................................................25

B.    The District Court Applied the Proper Standard in Determining that AirWare Was Not Entitled to Attorneys' Fees and Costs as a Condition of Dismissal ....................................................27

C.    The District Court Did Not Abuse Its Discretion In  Declining to Award Attorneys' Fees and Costs Under Federal Rule 41(a)(2) ...............................................................29

POINT  II :    THE  DISTRICT  COURT    CORRECTLY  DETERMINED THAT  THERE  WAS      NO  BASIS  FOR  IMPOSING  SANCTIONS AGAINST  CLERISY'S COUNSEL PURSUANT TO 28 U.S.C. § 1927 .............35

A.    Standard of Review ............................................................35

B.    The  District  Court  Did  Not  Abuse  Its  Discretion  When Declining to Award Attorneys' Fees and Costs Under 28 U.S.C. § 1927 ...............................................................36

CONCLUSION .......................................................................49

CERTIFICATE OF SERVICE ...............................................51

CERTIFICATE OF COMPLIANCE ......................................52

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Abbs v. Principi*,
    237 F.3d 1342 (Fed. Cir. 2001) ...........................................................................22

*Addventure Prods., Inc. v. Smoothreads, Inc.*,
    No. 07-cv-2025, 2009 U.S. Dist. LEXIS 94060 (S.D. Cal. Oct. 8, 2009) .........30

*B.K.B. v. Maui Police Dep't*,
    276 F.3d 1091 (9th Cir. 2001) .............................................................................37

*Braunstein v. Arizona Dep't of Trans.*,
    683 F.3d 1177 (9th Cir. 2012) .............................................................................37

*E-Pass Technologies, Inc. v. 3-Com*,
    559 F.3d 1374 (Fed. Cir. 2009) ...........................................................................22

*Furminator, Inc. v. Ontel Prods. Corp.*,
    4:06-cv-23, 246 F.R.D. 579 (E.D. Mo. 2007) ....................................................31

*The Gap, Inc. v. Stone Intl. Trading, Inc.*,
    169 F.R.D. 584 (S.D.N.Y. 1997) .........................................................................32

*Goldlawr, Inc. v. Shubert*,
    32 F.R.D. 467 (S.D.N.Y. 1963) ...........................................................................33

*Hamilton v. State Farm Fire & Cas. Co.*,
    270 F.3d 778 (9th Cir. 2001) ...............................................................................42

*Heckethorn v. Sunan Corp.*,
    992 F.2d 240 (9th Cir. 1993) ........................................................................27, 28

*Hepp v. Conoco, Inc.*,
    No. 02-36097, 97 F. App'x 124 (9th Cir. 2004).................................................26

*Herman v. U.S. Department of Labor*,
    1999 U.S. App. LEXIS 9121 (9th Cir. May 12, 1999)......................................26

*Jang v. Boston Sci. Corp.*,
    532 F.3d 1330 (Fed. Cir. 2008) ...........................................................................21

## TABLE OF AUTHORITIES
### (continued)

**Cases**                                                                    **Page(s)**

*In re Keegan Mgt. Co. Sec. Lit.*,
    78 F.3d 431 (9th Cir. 1996) ................................................................37

*McCants v. Ford Motor Co., Inc.*,
    781 F.2d 855 (11th Cir. 1986) ...........................................................33

*Morgan v. County of Yolo*,
    277 F. App'x 735 (9th Cir. 2008) ......................................................45

*Mortgage Guaranty Ins. Corp. v. Richard Carlyon Co.*,
    904 F.2d 298 (5th Cir. 1990) .............................................................33

*Phonometrics, Inc. v. Westin Hotel Co.*,
    350 F.3d 1242 (Fed. Cir. 2003) ...........................................46, 47, 48

*Primus Auto. Fin. Servs., Inc. v. Batarse*,
    115 F.3d 644 (9th Cir. 1997) .......................................................35, 36

*Roadway Express, Inc. v. Piper*,
    447 U.S. 752 (1980).............................................................................37

*SanDisk Corp. v. Kingston Technology Corp.*,
    695 F.3d 1348 (Fed. Cir. 2012) .........................................................21

*Schwartz v. Million Air, Inc.*,
    341 F.3d 1220 (11th Cir. 2003) .........................................................46

*SL Waber, Inc. v. Amer. Power Conversion Corp.*,
    135 F. Supp. 2d 521 (D.N.J. 1999)....................................................32

*Smith v. Lenches*,
    263 F.3d 972 (9th Cir. 2001) .............................................................35

*Stevedoring Servs. Of Am. v. Armilla Intern. B.V.*,
    889 F.2d 919 (9th Cir. 1989) .................................................25, 26, 30

*Tabra Inc. v. Treasures de Paradise Designs, Inc.*,
    No. C 90-0155, 1992 U.S. Dist. LEXIS 509 (N.D. Cal. Jan. 13, 1992)............30

# TABLE OF AUTHORITIES
### (continued)

**Cases**                                                                                    **Page(s)**

*Trulis v. Barton*,
   107 F.3d 685 (9th Cir. 1995) ................................................................35

*United States v. Associated Convalescent Enterprises, Inc.*,
   766 F.2d 1342 (9th Cir. 1985) ..........................................................37

*United States v. Hinkson*,
   585 F.3d 1247 (9th Cir. 2009) (en banc) .........................................25

*United States v. Rahm*,
   993 F.2d 1405 (9th Cir. 1993) ..........................................................25

*Westlands Water Dist. v. United States*,
   100 F.3d 94 (9th Cir. 1996) ..............................................25, 26, 30

**Statutes**

28 U.S.C. § 1927 ...............................................................................*passim*

35 U.S.C. § 285 ........................................................................................46

Fed. R. Civ. P. 41(a)(2) .....................................................................*passim*

Fed. R. App. P. 38 ...................................................................................22

Fed. R. App. P. 41(a) .............................................................................21

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, Appellees state that no appeal in or from the same civil action or proceeding in the lower court was previously before this or any other appellate court.  No case known to counsel is pending in this or any other court that will directly affect, or be directly affected by, this Court's decision in the pending appeal.

# COUNTER-STATEMENT OF THE ISSUES

1.    **Fed. R. Civ. P. 41(a)(2):**    Whether the District Court abused its discretion when it declined to condition the voluntary dismissal of the case under Fed. R. Civ. P. 41(a)(2) upon payment of Appellants' fees and costs, where:

    a.    Under Ninth Circuit law, there is *no* requirement to condition voluntary dismissal upon payment of fees and costs, and it is inappropriate to do so where a party faces *no* risk of future, duplicative litigation; and

    b.    Appellees, who simply could no longer afford to litigate the case against Appellants, executed a covenant not to sue that precludes the threat of any future, duplicative litigation against Appellants.

2.    **28 U.S.C. § 1927**: Whether the District Court abused its discretion in denying Appellants' request for attorneys' fees and costs under 28 U.S.C. § 1927, which provides for the imposition of "*excess* costs, expenses, and attorneys' fees" against any attorney who "*multiplies* the proceedings in any case *unreasonably and vexatiously*," where:

    a.    Appellees' infringement claims were well-supported and maintained in good faith, and there is *no* evidence that Appellees' counsel abused court processes or engaged in frivolous tactics that multiplied proceedings; and

    b.    Appellants never sought a dispositive ruling on the merits, and there has been no adjudication on the infringement claims.

# STATEMENT OF THE CASE

Appellees Clerisy Corporation and Reed Transition Technologies (collectively, "Clerisy") set forth the following points of disagreement with Appellants AirWare Holdings, Inc. and Crown Dynamics Corp. (collectively, "AirWare") characterization of the case:

First, AirWare fails to mention that before this lawsuit was filed, AirWare's CEO, Jeffrey Rassás, represented to Clerisy's CEO, President, and Founder, Dr. Mary Maida, that AirWare's infused products were designed and manufactured so that the essential oils on the products do not touch the skin or inside lining of the nose – thus having a "barrier" in accordance with the '982 Patent. (JA297). This representation and admission against interest was contemporaneously confirmed in writing by Dr. Maida and not refuted in any way by Mr. Rassás (JA301-302), AirWare has never alleged that the representation was false (JA308-09, JA314), and it remained one of the bases for Clerisy's infringement allegations (JA121).

Second, AirWare fails to mention that on January 14, 2013, the parties filed a Joint Case Management Report in which Clerisy set forth its position with respect to the presence of a "barrier" in the accused products, recounting information provided directly by AirWare:

> Airware's CEO, Jeffrey Rassás, confirmed to Clerisy's President and CEO, Dr. Mary Maida, before this lawsuit was filed that AirWare's products were specifically designed and manufactured so that essential oils do not touch the skin or the inside lining of the nose.

- 3 -

> Mr. Rassás acknowledged that when AirWare was designing its infused products, there was a concern about the essential oils touching the inside of the nose, due to irritation of the skin. Because of this concern, Mr. Rassás stated that AirWare's products were designed and manufactured so that there are no essential oils on the ring that touches the inside of the nose, and that the essential oils in the products do not touch the skin in any way.

(JA121). In that same filing, AirWare represented that "whether Defendants are directly and/or inducing and/or contributing to the infringement of at least one valid claim of the '982 Patent" was "genuinely in dispute." (JA127).

Third, although AirWare mentions that the District Court issued its Claim Construction Order on July 24, 2013, AirWare neglects to mention that the District Court ruled against AirWare on all eight disputed claim terms at issue. (JA33-50). The District Court largely adopted all of the constructions proposed by Clerisy, including the constructions for the terms "carrier" and "barrier." (*Id.*)

Fourth, AirWare fails to mention that it was delinquent in producing basic technical documentation regarding the accused products and that Clerisy was forced to file a motion to amend the scheduling order on July 11, 2013 due in part to AirWare's delinquent production. (JA311-312). Also, Clerisy was forced to file a motion to compel AirWare to identify the documents it was relying on to support its alleged non-infringement defenses (JA147-152) because AirWare refused to provide this information to Clerisy, stating: "We will not list for you the documents that we may select to support our non-infringement contentions. . .

[T]he collection of documents that we will rely upon to support our non-infringement contentions is protected work product." (JA209).

Fifth, AirWare never filed a motion for summary judgment at any point during the fourteen months that the District Court case was pending, yet spent time filing and briefing several other motions, including a lengthy motion to transfer and dismiss for lack of jurisdiction and standing. (JA9-23). Nothing procedurally precluded AirWare from filing a motion for summary judgment, and there has been no adjudication of the infringement claims.

Sixth, AirWare fails to mention that when Clerisy opposed AirWare's cross-motion for attorneys' fees and costs, Clerisy submitted detailed, uncontroverted declarations from Dr. Maida and one of its litigation attorneys establishing that the infringement allegations were well-supported and maintained throughout the litigation in good faith. (JA295-299, JA306-318).

## STATEMENT OF THE FACTS

### A.    The '982 Patent

Clerisy Corporation and Reed Transition Technologies are the exclusive licensee and owner, respectively, of U.S. Patent No. 6,295,982 (the "'982 Patent"). (JA62, JA295).

The '982 Patent is generally directed to vehicles for and methods of introducing a vapor of volatile substances (*e.g.*, essential oils) into an inhalation flow path of a user.  (JA51).  In accordance with the teaching of the patent, a vehicle or device is positioned in or near the entrance to the user's nose or mouth to introduce the volatile substance into the path of inhaled air.  (JA51-60).

Independent claim 11, which is representative, is set forth below:

> A vehicle for introducing a vapor of one at least one volatile substance into an inhalation flow path of a respiratory organ, the vehicle comprising:
>
> a carrier conformable to a surface of the skin;
>
> at least one volatile substance carried by the carrier;
>
> a barrier coupled to a surface of the carrier, the barrier being substantially impermeable to the one or more volatile substances carried by the carrier; and
>
> means for engaging the carrier to the surface of the skin proximate an inhalation flow path of a respiratory organ with the barrier adapted to be interposed between the carrier and the skin to prevent the one or more volatile substances from contacting the skin.

(JA60).

**B.     The Complaint Was Filed In Good Faith After
        a Thorough and Diligent Pre-Filing Investigation**

On July 26, 2012, after conducting a thorough and diligent pre-filing investigation, Clerisy and Reed Transition Technologies filed a complaint in the U.S. District Court for the Western District of New York asserting that AirWare Holdings, Inc. and Crown Dynamics Corp. were infringing the '982 Patent by making, using, selling, offering to sell, and/or importing nasal products infused with essential oils ("Infused Products"). (JA62-67).

Detailed information relating to the pre-filing investigation is set forth in: (1) the Declaration of Dr. Mary E. Maida, Clerisy's President, CEO, and Founder (JA295-299); and (2) the Declaration of Frederick Price, Esq., one of Clerisy's litigation attorneys (JA306-318), which were submitted when opposing AirWare's motion for attorney's fees and costs. Importantly, despite having an opportunity to do so, AirWare did not rebut *any* of the facts and evidence contained in the Maida and Price Declarations, which are uncontroverted and conclusively establish that the infringement allegations here were brought and maintained in good faith based in part on information provided *directly* by AirWare's CEO, and that the infringement issues were genuinely in dispute throughout the case. (*Id.*) Tellingly, AirWare *never* submitted an opposing declaration from Mr. Rassás.

Before filing suit, Clerisy's counsel reviewed and analyzed the '982 Patent and corresponding file history, as well as all publicly available materials regarding

- 7 -

AirWare's Infused Products. (JA307). Also, Clerisy's counsel made a Freedom of Information request to the Food & Drug Administration for technical information relating to AirWare's Infused Products. (*Id.*) Further, Clerisy's counsel sent letters to AirWare requesting samples and product literature (including product brochures and instruction sheets) for AirWare's Infused Products. (JA328-329). AirWare, however, deliberately ignored the letters and did not respond. (JA307).

In late June 2012, one of Clerisy's employees, Yvonne Friga, placed an order from AirWare. (JA296). After Ms. Friga received her order from AirWare, which included promotional samples of AirWare's Allergy and Sleep/Snore products (both infused with essential oils), she wrote to AirWare on July 20, 2012 asking: "**I am interested in trying Sleep/Snore, but wanted to know if the essential oils come in contact with the skin**?" (JA110) (emphasis added).

On July 23, 2012, AirWare's CEO, Jeffrey Rassás, wrote back to Ms. Friga. (JA112). Rather than answer her question, Mr. Rassás posed a question back: "The question I have for you is if you are inquiring as a customer or on behalf of the company that you work for, Clerisy Corp." (*Id.*)

On July 25, 2012, Clerisy's President and CEO, Dr. Mary Maida, wrote back to Mr. Rassás and asked to speak with him about AirWare's products infused with essential oils. (JA303). Dr. Maida suggested a phone call for the next day, which he accepted, and the two had a phone conversation on July 26, 2012. (*Id.*)

**C. AirWare Represented that the Infused Products Were Designed and Manufactured So that the Essential Oils on the Products Do Not Touch the Skin or Inside Lining of the Nose, Thus Having a "Barrier" in Accordance with the '982 Patent**

On July 26, 2012, before the lawsuit was filed, Mr. Rassás represented to Dr. Maida that AirWare's Infused Products were designed and manufactured so that the essential oils on the Infused Products do not touch the skin or inside lining of the nose – thus having a "barrier" in accordance with the '982 Patent:

> On July 26, 2012, [Dr. Maida] spoke with Mr. Rassás on the phone for approximately one hour. During that call, [Dr. Maida] expressed Clerisy's concern about the patent infringement issues, given the investigation and diligence conducted by [Clerisy's] counsel on AirWare's Infused Products. **Given that a visual inspection alone would not suffice, [Dr. Maida] also specifically inquired whether the essential oils contained in AirWare's Infused Products touched the skin or the inside lining of the nasal passages. Mr. Rassás confirmed to [Dr. Maida] that AirWare's Infused Products were designed and manufactured so that essential oils did not touch the skin or the inside lining of the nasal passages.** Mr. Rassás also confirmed that when AirWare was designing the products, there was a concern about the essential oils touching the inside of the nose, due to irritation of the skin. **Because of this concern, Mr. Rassás said the Infused Products were designed and manufactured so that there are no essential oils on the ring that touch the inside of the nose, and that the essential oils in the Infused Products do not touch the skin in any way; thus, having barrier in accordance with the '982 Patent**.

(JA297) (emphasis added). (AirWare's appeal brief fails to make *any* mention of this representation and admission against interest by Mr. Rassás, demonstrating the frivolous and deceptive nature of AirWare's appeal.)

- 9 -

After this representation by Mr. Rassás, Dr. Maida immediately followed up after the call (on July 26, 2012) by sending an email to him stating: "**Thanks for speaking with me today and confirming that the AirWare Essentials products are designed and manufactured so that essentials oils do not touch the skin or the inside lining of the nasal passages**." (JA301-02). Mr. Rassás responded to Dr. Maida's email that *same* day stating: "**As discussed please find the contact information for our patent attorneys**." (*Id.*) Mr. Rassás did not dispute in any way that he had confirmed that the Infused Products were designed and manufactured so that essential oils do not touch the skin or lining of the nose. (*Id.*) AirWare has *never* alleged that Mr. Rassás' statements were false, never provided any technical evidence refuting Mr. Rassás' statements after being given ample opportunity to do so, nor have they ever conceded that the essential oils on the Infused Products directly touch the skin or lining of the nose.

**Looking at the Infused Products does *not* indicate how they are infused with essential oils.** (JA297) (explaining "that a visual inspection alone would not suffice" to determine how the products are infused with essential oils). Dr. Maida, who holds a Master's Degree in Neurobiology and Anatomy and a Ph.D. in molecular neuroscience (JA295), went *directly* to Mr. Rassás to find out *how* AirWare's products were infused with essential oils, and Mr. Rassás specifically represented that that the Infused Products were designed and manufactured so that

the essential oils on the products do not touch the skin or lining of the nose, thus having a "barrier" in accordance with the '982 Patent. This was also corroborated during discovery. For example, as stated in one of the few documents produced by AirWare: "the oil does not come in contact with the nasal cavity." (JA411).

### D.    AirWare's Litigation Strategy and Conduct

Like most defendants in patent cases, AirWare responded to the filing of this lawsuit by claiming it did not infringe the '982 Patent. While AirWare argues that it "explained in detail" (App. Br. at 9)[1] in its correspondence in August 2012 that the Infused Products did not have a "barrier" as required by the '982 Patent, AirWare misrepresents the actual content of those letters. In fact, those letters merely contained the bald and unsupported legal position from AirWare's counsel that the Infused Products allegedly did not contain a "barrier," **without a shred of evidence or technical explanation**, and in contrast to the specific representation made by Mr. Rassás about how the Infused Products were designed and manufactured. (JA270-271). In fact, when responding to AirWare's counsel on August 14, 2012, Clerisy's counsel detailed the conversation between Mr. Rassás and Dr. Maida. (JA333-334). Clerisy also asked AirWare to "provide a detailed explanation with evidentiary support" of AirWare's alleged non-infringement

---

[1]    Citations to "App. Br. _" are to the Corrected Brief of Defendant-Appellants AirWare Holdings, Inc. and Crown Dynamics Corp. filed March 11, 2014.

contention, but AirWare refused, and again simply asserted the bald assertion that the Infused Products did not allegedly have a "barrier."  (JA308, JA333).

On September 10, 2012, Clerisy's counsel again highlighted AirWare's failure to rebut the infringement allegations by stating that "your letter offers no explanation or substance to support your position, and critically, it flies in the face of the fact that the accused AirWare products are infused with essential oils and designed and manufactured so that the essential oils do not touch the skin or the inside lining of the nose."  (JA336).  With respect to the notice letters sent to AirWare's distributor and a "potential customer,"[2] Clerisy informed AirWare that it clearly had "the right to notify others about the lawsuit and the '982 Patent, in accordance with established Federal Circuit law."  (JA334).

AirWare had every opportunity to come forward with substantiated, evidentiary support to refute the representation of Mr. Rassás about the product's design, but instead embarked on a litigation strategy of challenging a whole host of other issues, including jurisdiction and standing, seeking a transfer from the Western District of New York to the District of Arizona, stonewalling Clerisy's

---

[2]    Although AirWare alleges on appeal that it lost sales as a result of the letters, this is speculation not based on any substantiated evidence.  Tellingly, AirWare *never* asserted any claim for alleged interference with customer relations at the District Court, nor did it have any basis to do so.  There was no intent by Clerisy to interfere with any sales; the letters were merely notice letters indicating that a lawsuit had been filed.  Also, AirWare's distributor continued to distribute the products, and the evidence obtained at the District Court suggests that the products did not sell well in the market for reasons independent of the lawsuit.

discovery efforts, and vigorously pursuing narrow and legally impermissible claim constructions (all of which the District Court rejected). (JA309-15).

Indeed, in August 2012, rather than answer the complaint or address the substantive merits of the case, AirWare filed a motion to transfer[3] and to dismiss for lack of jurisdiction and standing, and submitted declarations regarding the sales and marketing of its products (but containing no technical information). (JA77-83, JA87-90). After lengthy briefing, a transfer was granted to Arizona. (JA12).

AirWare stonewalled Clerisy's discovery efforts throughout this case. For example, AirWare only first produced documents on January 28, 2013, but this production was minimal and deficient. (JA311). Clerisy underscored this issue in the Joint Case Management Report stating that it believed that "Defendants [we]re dragging their feet in discovery with the intent to delay matters."[4] (JA129).

Due to AirWare's continued delinquency, Clerisy was forced to file a motion to amend the scheduling order on July 11, 2013, *because even at that time*,

---

[3] In pursuing the transfer, AirWare manipulated the judicial system by telling the Western District of New York, where this case was initially filed, that Clerisy's products and witnesses were "**irrelevant**" to this case (JA75, JA116), and then after the case was transferred, turned around and argued to District of Arizona that such discovery was "**relevant**" (JA310). AirWare's reversal on its position was nothing more than sandbagging and an abuse of the system, wasting the resources of the District Court and the parties – much like this appeal. (JA309-311).

[4] Clerisy sought a short case schedule – proposing that fact discovery close on April 1, 2013 and trial commence in June 2013. (JA134-136). AirWare, however, countered that the case schedule proposed by Clerisy was "far too short on its face" and advocated a lengthy case schedule with trial in June 2014. (JA136-138).

AirWare had failed to produce basic technical documents sought by Clerisy in its discovery demands (and despite Clerisy's consistent but ultimately unsuccessful efforts to obtain the requested documents without the need for a motion). (JA312).

Incredibly, AirWare even refused to identify the documents it was relying on to support its alleged non-infringement defenses and counterclaims. In an email dated July 9, 2013, AirWare's lawyer, Paul Robbennolt, stated:

> **We will not list for you the documents that we may select to support our non-infringement contentions. . . . [T]he collection of documents that we will rely upon to support our non-infringement contentions is protected work product.**

(JA209). Due to AirWare's refusal to identify the documents it was relying on to allegedly support its non-infringement defenses, Clerisy was forced to file a motion to compel against AirWare (JA147-152), which was still pending when the District Court issued its order dismissing this case on December 4, 2013. (JA23).

### E. The District Court's Claim Construction Order Rejected *All* of the Claim Constructions Advocated by AirWare

The parties submitted two rounds of claim construction briefing. (JA19-20). The District Court then held a claim construction hearing and, on July 23, 2013, issued an order **ruling against AirWare on all eight disputed claim terms and phrases at issue**. (JA33-50).

In particular, the District Court rejected AirWare's argument that the "barrier" and "carrier" must be separate and distinct layers and made of different

materials.[5] (JA39) ("The Court finds Plaintiffs' position more convincing, and will adopt their proposed constructions of 'barrier' and 'carrier.' Plaintiffs correctly note that 'Defendants' proposed constructions rely on limitations imported from the specification into the claims.'"). The District Court adopted Clerisy's constructions of the term "carrier" as "a portion of the vehicle or device that carries or provides at least one volatile substance" and the term "barrier" as "a portion of the vehicle or device that prevents contact between the skin and the volatile substance." (JA38-39).

After the Claim Construction Order issued, AirWare's CEO, Mr. Rassás, acknowledged in his deposition that AirWare's primary non-infringement position up to that point of the case – that the "barrier" and "carrier" must be made of separate and distinct structures and materials – **had been rejected by the District Court**. (JA315-316, JA425).

###    F.    The Infringement by AirWare's Infused Products Was Genuinely in Dispute Throughout this Case

The infringement issues were genuinely in dispute throughout this case. Importantly, AirWare represented to the District Court in the parties' Joint Case

---

[5]    AirWare contended that the term "carrier" should be construed as "distinct layer comprised of a substantially absorbent material that can take up and hold the volatile substance, while allowing the release of the vapor of the volatile substance" and the term "barrier" should be construed as "a distinct layer comprised of a different material than the carrier that prevents the volatile substance from contacting the skin." (JA38-39).

Management Report filed on January 14, 2013 that "whether Defendants are directly and/or inducing and/or contributing to the infringement of at least one valid claim of the '982 Patent, either literally or under the doctrine of equivalents" was "**genuinely in dispute**." (JA127) (emphasis added). In that same filing, Clerisy specifically alleged:

> On information and belief, the infringing products are designed and manufactured so that the essential oils do not touch the skin or the inside lining of the nose. **AirWare's CEO, Jeffrey Rassás, confirmed to Clerisy's President and CEO, Dr. Mary Maida, before this lawsuit was filed that AirWare's products were specifically designed and manufactured so that essential oils do not touch the skin or the inside lining of the nose.** Mr. Rassás acknowledged that when AirWare was designing its infused products, there was a concern about the essential oils touching the inside of the nose, due to irritation of the skin. **Because of this concern, Mr. Rassás stated that AirWare's products were designed and manufactured so that there are no essential oils on the ring that touches the inside of the nose, and that the essential oils in the products do not touch the skin in any way.**

(JA121) (emphasis added). Rather than directly respond to these specific and detailed allegations, or explain how they were incorrect in any way, AirWare only generally denied the allegations. (*Id.*)

Clerisy provided AirWare with detailed infringement claim charts, both immediately after the lawsuit was filed and during discovery. (JA389-423). AirWare *never* raised any issue with these claim charts (either by letter or motion practice), nor did AirWare seek summary judgment of non-infringement at any point during the fourteen months that the litigation was pending. Importantly, all

of Clerisy's infringement theories were validated by the District Court's Claim Construction Order. (JA33-50).

The fact is that the infringement claims were brought and maintained in good faith based on due diligence conducted by Clerisy and its counsel and on the representation of AirWare's CEO that the Infused Products were designed and manufactured so that the essential oils on the products do not touch the skin or inside lining of the nose, and there were no essential oils on the ring that touches the inside of the nose, thus having a barrier. (JA295-299, JA306-318). Moreover, even as recently as September 2013, when the parties discussed a mutual dismissal of all claims and counterclaims, with all parties to bear their own attorneys' fees and costs, AirWare refused to execute an affidavit that stated: "When AirWare's infused products (Air Allergy, Air Travel, Air Sleep/Snore, Air Headache, Air Nausea, Air Decongest, and Air Sport) are placed in a user's nasal passage, the essential oils contained on such infused products come into direct contact with the inside lining of the user's nasal passage." (JA298-299). Given AirWare's refusal to sign this affidavit, and given all the other evidence in the case, along with the fact that the Claim Construction Order validated Clerisy's infringement case and quashed AirWare's primary non-infringement argument that the "barrier" and "carrier" must be separate and distinct materials, Clerisy continued to have a good faith basis for the infringement in this case.

Notwithstanding its allegation in this appeal that its non-infringement was "unequivocal" (which is false and belied by the record), it is telling that AirWare does not point to a *single* technical document produced during discovery to support its position. Although AirWare points to its witnesses' testimony from late July and August 2013 (one year after the case was filed) to allegedly support its argument that "*molecules* of the essential oils" come into contact with the skin, AirWare only came forward with this new argument *after* the Court's Claim Construction Order was issued on July 24, 2013. (JA313-317). Also, while AirWare characterizes this testimony as "unequivocal evidence," AirWare previously objected to its witnesses' testimony saying that it was "incomplete testimony taken out of context," "assume[d] facts not in evidence," "vague and ambiguous," and even outright denied its witnesses' testimony. (JA318).

It appears that AirWare's strategy in this case has been to take advantage of Clerisy's candid lack of financial resources by engaging in an abusive and deceptive course of litigation conduct, apparently hoping that Clerisy would eventually no longer be able to litigate its infringement claims against AirWare. Unfortunately, that is exactly what happened. Accordingly, prior to the close of discovery, and after prevailing during claim construction, Clerisy had to make the difficult decision to end the case.

### G.    Disposition Below

On September 27, 2013, based solely on financial hardship, Clerisy moved to voluntarily dismiss all claims and counterclaims without prejudice (JA211-214) and executed a covenant not to sue that eliminated any case or controversy between the parties.  (JA215).

AirWare did not oppose dismissal or contend that it would be prejudiced. (JA25).  However, AirWare requested that the District Court award attorneys' fees and costs either as a condition of dismissal pursuant to Federal Rule 41(a)(2) or as a sanction pursuant to 28 U.S.C. § 1927.  (*Id.*).  Although the case had been pending for fourteen months, AirWare argued *for the first time* to the District Court that this case was allegedly a "frivolous" lawsuit, despite previously telling the District Court that the infringement issues were "genuinely in dispute" (JA127) and despite the fact that *all* of its claim constructions were rejected by the District Court.  (JA33-50).  (On the District Court docket, AirWare's cross-motion was Docket No. 110 – there is not a *single* mention by AirWare of a "frivolous" lawsuit in *any* of the preceding one hundred and nine (109) docket entries.)

On December 4, 2013, after full briefing on the issues, and after considering the parties' arguments and evidence, the District Court issued an order granting the voluntary dismissal of all claims and counterclaims, and denying Appellants' cross-motion for attorneys' fees and costs.  (JA24-32).

In its decision, the District Court recognized that it had the discretion to condition dismissal on an award of fees under Federal Rule 41(a)(2), but it found no basis to do so under the circumstances here.  (JA26-27).  Indeed, the District Court noted that "[a] fee award is particularly inappropriate in this case, given that Plaintiffs' [sic] have executed a covenant not to sue.  Defendants face no threat of future, duplicative litigation."  (JA27).

The District Court also determined that "Plaintiffs' claims were not frivolous, nor was its pursuit of them vexatious or intended to harass."  After carefully reviewing the record, the District Court found *no* evidence "that Plaintiffs' attorneys pursued their infringement claims recklessly or in bad faith." (JA31).  Also, the Court took issue with AirWare's non-infringement contention:

> While Defendants contend that the lack of a barrier in its products is an unequivocal fact, this assertion is based solely on their representation that "molecules" of the essential oil—presumably in a gaseous rather than liquid form—do come into contact with the skin. It is not clear to the Court whether this representation actually establishes the absence of a barrier, as that term has been construed by the Court.

(*Id.*)  The Court also noted that "there has been no determination concerning the merits of Plaintiffs' claims; nor would a finding that the claims lacked merit be sufficient for sanctions under § 1927 without a finding of subjective bad faith."

(*Id.*)  The Court concluded that Clerisy's counsel did not pursue the claims in bad

faith or multiply the proceedings unreasonably and vexatiously, and that there was no basis for sanctions pursuant to Section 1927.  (*Id.*)

On January 3, 2014, AirWare filed a Notice of Appeal.  AirWare indicated in its Notice of Appeal and in its Docketing Statement that it was appealing *both* the District Court's December 4, 2013 order dismissing the case *and* the District Court's July 24, 2014 Claim Construction Order, seemingly acknowledging that its appeal of the denial of attorneys' fees and costs could not be maintained in the face of the District Court's rejection of *all* of AirWare's proffered constructions.  After being warned by Clerisy that an appeal on claim construction would be plainly frivolous under well-established law of this Circuit,[6] AirWare abandoned its appeal of the Claim Construction Order, but refused to abandon its frivolous appeal of the District Court's decision declining to award attorneys' fees and costs.

---

[6]    The Federal Circuit has no Article III jurisdiction to review claim construction issues in situations in which a party voluntarily dismissed its patent infringement claims pursuant to Federal Rule 41(a).  *See, e.g., SanDisk Corp. v. Kingston Technology Corp.*, 695 F.3d 1348, 1353-54 (Fed. Cir. 2012); *Jang v. Boston Sci. Corp.*, 532 F.3d 1330, 1336 (Fed. Cir. 2008).

# SUMMARY OF THE ARGUMENT

AirWare has failed to identify *any* reversible error in the District Court's decision. Although AirWare attempts on appeal to portray this case as a "frivolous" patent suit – apparently hoping to capitalize on one of the hot-button issues in patent litigation – nothing could be further from the truth in this case. Clerisy's infringement claims have always been meritorious and well-supported, and the record reveals no reckless or bad faith conduct by Clerisy's counsel. The *real* problem here is the abusive and deceptive defense tactics by AirWare and its counsel, who pursued narrow and legally impermissible constructions (which were *all* rejected by the District Court), failed to produce basic technical documentation, refused to identify the documents that allegedly supported its non-infringement defenses, and now pursues this frivolous appeal based on misrepresentations and false statements to this Court.[7]

---

[7]      Pursuant to Federal Rule of Appellate Procedure 38, "If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." *See, e.g., E-Pass Technologies, Inc. v. 3-Com*, 559 F.3d 1374, 1377 (Fed. Cir. 2009) (awarding attorneys' fees for a frivolous appeal against party and its counsel, jointly and severally). An appeal is frivolous as filed "when an appellant grounds his appeal on arguments or issues that are beyond the reasonable contemplation of fair-minded people, and no basis for reversal in law or fact can be or is even arguably shown." *Abbs v. Principi*, 237 F.3d 1342, 1345 (Fed. Cir. 2001) (internal quotations omitted). An appeal is frivolous as argued "when an appellant has not dealt fairly with the court, [or] has significantly misrepresented the law or facts." *Id.*

The District Court properly declined to condition the voluntary dismissal of the claims and counterclaims upon payment of AirWare's fees and costs under Federal Rule 41(a)(2), and properly denied AirWare's request for attorneys' fees and costs under 28 U.S.C. § 1927. Senior Judge Paul G. Rosenblatt – who has served as an Article III judge for thirty years – issued a well-reasoned decision that considered all of the arguments and evidence presented by both sides. There was *no* error in the District Court's view of the law or assessment of the facts, let alone a *clearly* erroneous assessment of the facts required to show an abuse of discretion.

First, while the District Court recognized that it had the discretion to condition the dismissal on an award of attorneys' fees under Federal Rule 41(a)(2), it correctly found no basis under the facts here. (JA-27). The District Court also correctly found that a fee award was particularly inappropriate in this case, given that Clerisy executed a covenant not to sue. AirWare faces no threat of future, duplicative litigation. The well-established rule in the Ninth Circuit is that fee-shifting under Federal Rule 41(a) is inappropriate where a party, as here, faces *no* risk of having to defend duplicative future litigation. The covenant not to sue executed by Clerisy insures that Clerisy can never litigate these infringement claims again against AirWare. The District Court's decision declining to condition dismissal on an award of fees and costs was consistent with the great weight authority on this issue, and there was no abuse of discretion.

- 23 -

Second, the District Court properly held that there was no basis for awarding any attorneys' fees or costs to AirWare pursuant to 28 U.S.C. § 1927. It is well-settled that Section 1927 is an extraordinary, rare, and limited remedy that 1) requires a specific finding and clear showing that counsel multiplied the proceedings unreasonably and vexatiously through recklessness or bad faith, 2) does not apply to the filing of a complaint – it only covers subsequent conduct, and 3) does not authorize reimbursement for ordinary fees and costs of trial – it only authorizes excess fees and costs due to unreasonable and vexatious conduct.

The infringement allegations were brought and maintained in good faith by Clerisy and its counsel. The District Court correctly determined that Clerisy's claims were not frivolous, nor was its pursuit of them vexatious or intended to harass. After reviewing the record and considering each party's arguments, the District Court found no evidence that Clerisy's counsel pursued the infringement claims recklessly or in bad faith. The District Court also noted that there had been no adjudication on the infringement claims, and correctly determined that there was no evidence on this record that the infringement claims were pursued in bad faith. There was simply no basis for any sanctions under § 1927.

The District Court's decision should be affirmed.

# ARGUMENT

## POINT I:

### THE DISTRICT COURT CORRECTLY DECLINED TO CONDITION DISMISSAL PURSUANT TO FEDERAL RULE 41(a)(2) ON AN AWARD OF ATTORNEYS' FEES OR COSTS

### A.  Standard of Review

A district court's determination of the terms and conditions of dismissal under Federal Rule 41(a)(2) is reviewed for an abuse of discretion.  *Westlands Water Dist. v. United States*, 100 F.3d 94 (9th Cir. 1996); *Stevedoring Servs. Of Am. v. Armilla Intern. B.V.*, 889 F.2d 919, 921 (9th Cir. 1989).

Under Ninth Circuit law,[8] the District Court's determination that an award of attorneys' fees and costs was not an appropriate condition of dismissal here should not be disturbed, absent evidence that it "base[d] its decision on an erroneous view of the law or a clearly erroneous assessment of the facts." *United States v. Rahm*, 993 F.2d 1405, 1410 (9th Cir. 1993).  If the District Court has applied the appropriate legal standard, this Court then must consider whether the application of the correct legal standard was (i) illogical; (ii) implausible; or (iii) without support in inferences that may be drawn from the facts in the record.  *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).  If any of these three apply, "only then" may the Court have a "definite and firm conviction" that the

---

[8]    Clerisy is in agreement that Ninth Circuit law applies to both challenged issues on this appeal.

district court reached a conclusion that was a "mistake" or was not among its "permissible" options, and thus that it abused its discretion by making a clearly erroneous finding of fact. *Id.*

AirWare has not cited a *single* case in which either this Court or the Ninth Circuit has held that a failure to award costs and fees as a condition of dismissal rose to the level of an abuse of discretion. Indeed, the Ninth Circuit has repeatedly held that a district court does *not* abuse it discretion by simply declining to condition a Federal Rule 41(a)(2) dismissal without prejudice on an award of attorneys' fees. *See, e.g.*, *Westlands*, 100 F.3d 94, 97 ("[i]mposition of costs and fees as a condition for dismissing without prejudice is not mandatory"); *Stevedoring*, 889 F.2d at 921 ("[a]lthough costs and attorney fees are often imposed upon a plaintiff who is granted a voluntary dismissal under Fed. R. Civ. P. 41(a)(2), no circuit court has held that payment of the defendant's costs and attorney fees is a prerequisite to an order granting voluntary dismissal"); *Hepp v. Conoco, Inc.*, No. 02-36097, 97 F. App'x 124 (9th Cir. 2004) (district court did not abuse its discretion in declining to condition voluntary dismissal on plaintiff's payment of defendant's attorneys' fees); *Herman v. U.S. Department of Labor*, 1999 U.S. App. LEXIS 9121 (9th Cir. May 12, 1999) (affirming district court's decision not to award attorneys' fees as a condition of Rule 41(a)(2) dismissal because district court "provided reasons for its decision").

- 26 -

**B.** **The District Court Applied the Proper Standard in Determining that AirWare Was Not Entitled to Attorneys' Fees and Costs as a Condition of Dismissal**

Apparently recognizing that the deferential abuse of discretion standard of review completely forecloses the relief it is seeking on appeal, AirWare does not even attempt to refute the District Court's well-reasoned explanation for denying AirWare's fee request (*i.e.*, that the covenant not to sue negated any risk of duplicative litigation) or to demonstrate that the District Court's finding was based on an alleged misunderstanding of any facts. Instead, AirWare argues that the District Court is not entitled to *any* deference because the Court was allegedly under the mistaken impression that it could not exercise its discretion to award attorneys' fees absent an independent statutory basis for doing so, pursuant to *Heckethorn v. Sunan Corp.*, 992 F.2d 240, 242 (9th Cir. 1993).

While AirWare goes to great lengths to fabricate an "error of law" out of the District Court's citation to *Heckethorn*, AirWare's argument is unavailing because the "independent legal basis" test in *Heckethorn* was not the basis for the District Court declining to shift AirWare's attorneys' fees. To the contrary, the decision clearly demonstrated that the District Court was fully aware that it had the discretion to condition dismissal on an award of attorneys' fees:

> A court has the discretion to condition a dismissal without prejudice upon the payment of "appropriate costs and attorney fees."

. . .

**While the Court agrees with Defendants that it retains the discretion to condition dismissal on an award of attorneys' fees, it finds no basis to do so here.**

(JA26, JA27) (emphasis added).

AirWare acknowledges that the independent basis standard in *Heckethorn* applies to the imposition of fees against *attorneys* as a condition of dismissal pursuant to Federal Rule 41(a)(2). App. Br. at 21. The District Court cited *Heckethorn* for precisely this proposition.[9] (JA27) (citing *Heckethorn* for the proposition that "Fed. R. Civ. P. 41(a)(2) is not 'specific statutory authority' for the imposition of sanctions *against an attorney"*) (emphasis added).

The basis for the District Court's denial of AirWare's cross-motion against Clerisy was not the absence of an independent statutory authority for sanctions, but rather the fact that an award of attorneys' fees was unwarranted in view of the covenant not to sue and the fact that AirWare faced no risk of future, duplicative litigation. (JA27). The District Court acknowledged that it had discretion to condition dismissal of Clerisy's claims on an award of attorneys' fees to AirWare, but declined to do so on the grounds that "[a] fee award is particularly

---

[9]  The conclusion section of AirWare's motion papers at the District Court suggested that AirWare was also moving against Clerisy's counsel pursuant to Federal Rule 41(a)(2). (Dkt. No. 110) ("AirWare respectfully requests that the Court condition any dismissal of this action on Clerisy's and its counsel's reimbursement of AirWare's fees and costs").

inappropriate in this case, given that Plaintiffs' have executed a covenant not to sue. Defendants face no threat of future, duplicative litigation." (JA27). This holding was not only a reasonable exercise of the District Court's discretion, but consistent with the great weight of authority in both the Ninth Circuit and throughout the country.

The District Court's correct exercise of discretion should not be disturbed on appeal and AirWare's transparent request for *de novo* review should be rejected.

### C. The District Court Did Not Abuse Its Discretion In Declining to Award Attorneys' Fees and Costs Under Federal Rule 41(a)(2)

Clerisy moved for dismissal without prejudice because there had been no dispositive rulings in the case. (JA213). The covenant not to sue was in no way a concession on any of the merits of the case given Clerisy's continued good faith belief in the infringement claims. (JA214). While AirWare contends that Clerisy "refused to dismiss with prejudice" (App. Br. at 14), this falsely paints the impression that AirWare requested dismissal with prejudice at the District Court. In fact, AirWare did not object to Clerisy's request for dismissal *without prejudice*, as recognized by the District Court's decision. (J25).

Although AirWare argues that courts "ordinarily" condition dismissal without prejudice pursuant to Federal Rule 41(a)(2) on an award of attorneys' fees and costs, it is well-established law in the Ninth Circuit that the payment of costs

and fees is by no means a prerequisite to an order granting dismissal under any circumstances, let alone under the circumstances here, where Clerisy executed a covenant not to sue that immunizes AirWare from any risk of duplicative claims. *See Westlands*, 100 F.3d at 98 ("Imposition of costs and fees as a condition for dismissing without prejudice is not mandatory"); *Stevedoring*, 889 F.2d at 921 ("Although costs and attorney fees are often imposed upon a plaintiff who is granted a voluntary dismissal under Fed. R. Civ. P. 41(a)(2), no circuit court has held that payment of the defendant's costs and attorney fees is a prerequisite to an order granting voluntary dismissal").

Indeed, numerous district court decisions in the Ninth Circuit have declined to impose attorneys' fees on the dismissing party where the defendant, like AirWare, faces no risk of being forced to defend duplicative future litigation. *See, e.g., Addventure Prods., Inc. v. Smoothreads, Inc.*, No. 07-cv-2025, 2009 U.S. Dist. LEXIS 94060, at *6-7 (S.D. Cal. Oct. 8, 2009) (declining to condition dismissal upon payment of attorneys' fees and costs and stating "[t]his is not a case where there is any potential for [plaintiff] to refile the action and impose duplicative litigation expenses on [defendant]."); *Tabra Inc. v. Treasures de Paradise Designs, Inc.*, No. C 90-0155, 1992 U.S. Dist. LEXIS 509, at *4 (N.D. Cal. Jan. 13, 1992) (declining to condition dismissal without prejudice of a copyright action on plaintiff's reimbursement of defendants' attorneys' fees).

Also, nearly every district court around the country that has addressed a motion to dismiss without prejudice pursuant to Federal Rule 41(a)(2) where the plaintiff has *also* tendered a covenant not to sue has declined to impose a fee-shift as a condition of dismissal. Notwithstanding AirWare's efforts to downplay these cases, the decision to deny fees in each of these cases was unquestionably based on the plaintiff's tender of a covenant not to sue.

For example, the Eastern District of Missouri granted a plaintiff's motion to dismiss a patent action without prejudice where the plaintiff determined that the action was economically unviable following a preliminary claim construction ruling (here, the claim construction ruling was entirely in Clerisy's favor), and subsequently tendered a covenant not to sue to the defendant. *Furminator, Inc. v. Ontel Prods. Corp.*, 4:06-cv-23, 246 F.R.D. 579, 594 (E.D. Mo. 2007). Rejecting the defendant's request that dismissal be conditioned on an award of fees and costs, the court stated that "the covenant not to sue precludes the possibility of relitigation of this matter, and therefore an award of fees and costs, which is *designed to protect defendants from the expense of defending an action again*, is not required." *Id.* at 596 (emphasis added).

The District of New Jersey has likewise declined to condition dismissal without prejudice on a fee-shift where the plaintiff in a patent suit delivered a covenant not to sue. The court noted:

- 31 -

Reimbursement of [the defendant]'s attorneys' fees might be appropriate under Rule 15(a) if [the plaintiff] merely sought to dismiss its infringement claim on the '991 patent without prejudice, but [the plaintiff] has done much more than that. [The defendant] will walk away from this litigation knowing that it will never again be sued for alleged infringement of the '991 patent and that it remains free to market its own products. This is valuable consideration being given to [the defendant] by [the plaintiff] as a condition of [the plaintiff's] decision to withdraw its claim of infringement of the '991 patent. In light of result (*sic*), [the defendant] should consider the costs and attorneys' fees it has incurred in defending against [the plaintiff]'s claim of infringement of the '991 patent money well spent.

*SL Waber, Inc. v. Amer. Power Conversion Corp.*, 135 F. Supp. 2d 521, 528 (D.N.J. 1999).

Similarly, the Southern District of New York declined to award fees or costs as a condition of dismissal without prejudice, provided the plaintiff agreed to execute a covenant not to sue. *The Gap, Inc. v. Stone Intl. Trading, Inc.*, 169 F.R.D. 584, 588 (S.D.N.Y. 1997) ("Under the present circumstances, the Court declines to award attorneys' fees or costs to the defendants. The purpose of such an award is generally to reimburse the defendant for the litigation costs incurred in view of the risk faced by the defendant that the same suit will be refiled and will result in the imposition of duplicative expenses. The [plaintiff]'s offer of a covenant not to sue obviates the need to reimburse the defendants on this ground, however, since there is no possibility of relitigation.").

While Clerisy recognizes these district court cases are not binding precedent, they certainly demonstrate that the District Court here did not abuse its discretion in declining to condition the voluntary dismissal of the case on an award of attorneys' fees and costs given the covenant not to sue executed by Clerisy.

All the cases cited in AirWare's brief involved situations where duplicative litigation was *expressly contemplated* by the plaintiff, and thus a fee-shift to prevent any duplicative fees was a reasonable condition of dismissal:

- In *Westland*, the defendants faced a "specter of future litigation" based on the court's dismissal of the plaintiff's complaint without prejudice, and the court recognized that a district court may, but is not required to, condition dismissal on a fee-shift to address this inequity. 100 F.3d at 97.

- In *McCants v. Ford Motor Co., Inc.,* 781 F.2d 855, 856 (11th Cir. 1986) the question addressed by the Eleventh Circuit was whether "it constitutes an abuse of discretion for a court to dismiss without prejudice an action that is time-barred as brought, *where the purpose or effect of such dismissal is to allow the plaintiff to refile the action in a place or manner in which it is not similarly barred.*" *Id.* at 858 (emphasis added).

- In *Mortgage Guaranty Ins. Corp. v. Richard Carlyon Co.*, 904 F.2d 298, 299 (5th Cir. 1990), the defendant objected to a dismissal without prejudice, filed the day of trial, on the grounds that such dismissal would expose them to a duplicative lawsuit. *Id.* This case merely underscores the principle that dismissal should only be conditioned on a fee-shift where the dismissal exposes the defendant to duplicative litigation.

- *Goldlawr, Inc. v. Shubert*, 32 F.R.D. 467 (S.D.N.Y. 1963) involved a pending similar antitrust lawsuit in Pennsylvania, the outcome of which, defendants alleged, could result in the imposition of contribution liability against the defendants, and thus the covenant not to sue did not fully eliminate the risk of future duplicative litigation. In other words, there was a risk of future litigation that the covenant not to sue did not address. Here, AirWare has never challenged the sufficiency of the covenant not to sue

executed by Clerisy, nor has AirWare alleged that notwithstanding the covenant not to sue, it could be forced to incur duplicative litigation costs.

AirWare has failed to cite *any* case in which a district court conditioned dismissal pursuant to Federal Rule 41(a)(2) on the plaintiff reimbursing the defendant's attorneys' fees and costs after the plaintiff executed a covenant not to sue and where, as here, the defendant admittedly faced no specter of future litigation, let alone an appellate case holding that a district court's denial of fees under these circumstances rises to the level of a reversible abuse of discretion.

AirWare argues that "no Court has held that the district court *cannot* condition a dismissal on the plaintiff's reimbursement of fees in cases where the parties to a dismissal without prejudice also executed a covenant not to sue." App. Br. at 25 (emphasis added). But this argument turns the abuse of discretion standard of review on its head: AirWare is *only* entitled to reversal *if* the District Court abused its discretion. As the ample case law cited above demonstrates, AirWare has not come close to establishing that the District Court's exercise of discretion in this case constituted a clear abuse of discretion. To the contrary, the District Court's exercise of discretion was not only reasonable, but consistent with the great weight of authority. The District Court properly held that AirWare faces no risk of future, duplicative litigation in view of the covenant not to sue.

The District Court's holding that there was no basis for a fee award under the circumstances of this case is sound, and should be affirmed.

## POINT II:

## THE DISTRICT COURT
## CORRECTLY DETERMINED THAT THERE WAS
## NO BASIS FOR IMPOSING SANCTIONS AGAINST
## CLERISY'S COUNSEL PURSUANT TO 28 U.S.C. § 1927

### A.     Standard of Review

The decision of a district court declining to award sanctions for fees and costs pursuant to 28 U.S.C. § 1927 for claims that are voluntarily dismissed pursuant to Federal Rule 42(a)(2) must be affirmed absent an abuse of discretion. *See Smith v. Lenches*, 263 F.3d 972, 978-79 (9th Cir. 2001) (finding defendant failed to establish that the district court abused its discretion by denying defendant's motion for attorneys' fees pursuant to 28 U.S.C. § 1927 where plaintiff voluntarily dismissed its federal claims in favor of proceeding in state court).

In determining whether to award sanctions pursuant to Section 1927, "[d]istrict courts enjoy much discretion in determining whether and how much sanctions are appropriate." *Trulis v. Barton*, 107 F.3d 685, 694 (9th Cir. 1995).

Consequently, decisions denying sanctions are rarely reversed in the Ninth Circuit because "our precedent makes clear that the district court has 'broad factfinding powers' to 'grant or decline sanctions and that its findings warrant' great deference." *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997).

## B.     The District Court Did Not Abuse Its Discretion When Declining to Award Attorneys' Fees and Costs Under 28 U.S.C. § 1927

The infringement allegations in this case were well-supported and maintained in good faith, and were genuinely in dispute throughout the case. (JA295-299, JA306-318).  AirWare's appeal is based on pure subterfuge and a calculated failure to reference or even address the full factual landscape supporting Clerisy's infringement position – which Clerisy has made perfectly clear from the beginning of this case.

If AirWare's alleged non-infringement was "unequivocal" as they argue on appeal, why did they waste the District Court's and parties' time with vigorously pursuing narrow and strained claim constructions?  And, if AirWare's alleged non-infringement was "unequivocal" as they argue on appeal, why didn't they file a summary judgment motion at the beginning or at any other point of the case? Contrary to the contentions in AirWare's appeal brief (App. Br. 14), there is *nothing* that prevented AirWare from doing so, and it is false to state otherwise.

Sanctions against counsel pursuant to 28 U.S.C. § 1927 are reserved for the "rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." *Primus*, 115 F.3d at 649.  This extraordinary and rare remedy may only be imposed against counsel who "multiplies the proceedings in any case unreasonably and

vexatiously," through recklessness or subjective bad faith. *See B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107 (9th Cir. 2001) (citing cases).

The Supreme Court has explained that Section 1927 is "indifferent to the equities of a dispute and to the values advanced by the substantive law. It is concerned only with limiting the abuse of court processes." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 762 (1980); *see also Braunstein v. Arizona Dep't of Trans.*, 683 F.3d 1177, 1189 (9th Cir. 2012) (reversing imposition of Section 1927 sanctions against plaintiff's attorneys because they "did not file repetitive motions or generate an extraordinary volume of paperwork in this case").

Section 1927 authorizes only *excess* fees and costs incurred because of an attorney's unreasonable conduct – it does not authorize imposition of sanctions to reimburse a party for ordinary fees and costs of trial. *United States v. Associated Convalescent Enterprises, Inc.*, 766 F.2d 1342, 1347 (9th Cir. 1985). Further, it is well-settled that Section 1927 does not apply to the initial filing of a complaint – it covers only subsequent conduct. *In re Keegan Mgt. Co. Sec. Lit.*, 78 F.3d 431, 435 (9th Cir. 1996).

While AirWare acknowledges, as it must, that the deferential abuse of discretion standard applies to the District Court's denial of AirWare's cross-motion for sanctions against Clerisy's counsel (App. Br. at 19), AirWare maintains that the denial of sanctions should be reversed because the District

Court allegedly failed to appreciate that Clerisy and its counsel "were unable, at any stage of this litigation, to articulate an infringement theory that identified a structure of the accused products that satisfied the 'barrier' limitation of the asserted claims." App. Br. at 28. AirWare argues that Clerisy's infringement claims were "frivolous," sufficient to justify an imposition of sanctions against Clerisy's counsel, notwithstanding, as the District Court noted, that there has never been *any* adjudication of the merits of Clerisy's infringement claims, and notwithstanding that Clerisy prevailed in claim construction. (JA31).

The fact is that the District Court properly (1) considered each party's arguments, and (2) concluded that the record contained *no* evidence that Clerisy's counsel pursued this litigation recklessly or in bad faith, and that Clerisy's claims were *not* frivolous. The District Court specifically considered and mentioned the purported "evidence" on which AirWare argued that its non-infringement was "unequivocal" – including the deposition testimony of AirWare's witnesses from July and August 2013 – and properly concluded that none of this "evidence" established that Clerisy's counsel pursued this litigation recklessly or in bad faith, or that Clerisy's claims were frivolous. (JA31). AirWare has identified no reversible error in the District Court's analysis.

Although AirWare argues to this Court that Clerisy allegedly was never able to identify a "barrier" or articulate a theory of infringement (App. Br. 30-31),

AirWare's arguments are false and belied by the record.  For example, AirWare's ignores the fact that Clerisy's infringement allegations were based in part on specific representations by AirWare's CEO regarding the design of the accused products, which provided ample basis for Clerisy's infringement allegations. Indeed, prior to the commencement of the action, AirWare's CEO represented that AirWare's Infused Products were designed and manufactured so that essential oils do not touch the skin or the inside lining of the nasal passages:

> Mr. Rassás also confirmed to [Dr. Maida] that when AirWare was designing the products, there was a concern about the essential oils touching the inside of the nose, due to irritation of the skin.  Because of this concern, **Mr. Rassás said the Infused Products were designed and manufactured so that there are no essential oils on the ring that touch the inside of the nose, and that the essential oils in the Infused Products do not touch the skin in any way**.

(JA297).  Mr. Rassás' representation that the Infused Products were "designed and manufactured so that there are no essential oils on the ring that touch the inside of the nose" was consistent with Clerisy's infringement allegations that the Infused Products contained a "barrier" in accordance with the '982 Patent.  Further, this information was provided to AirWare's counsel beginning in August 2012 (JA333-334) and to the District Court in January 2013 in the Joint Case Management Report (JA121), and was articulated throughout the case, including when Clerisy opposed AirWare's baseless motion for attorneys' fees and costs (JA282-294, JA295-299, JA306-318, and JA441-442).

AirWare also falsely contends that "even a glance at the AIR products confirms [that] they do not incorporate a 'barrier.'" App. Br. at 8. Looking at the products does *not* indicate how they are infused with essential oils. (JA297). Moreover, AirWare's purported basis for arguing that Clerisy "should have known" that the Infused Products did not allegedly contain a "barrier" is premised on AirWare's narrow interpretation of that claim term, which was rejected by the District Court's Claim Construction Order. (JA39). Indeed, AirWare disregards that the District Court construed "barrier" to mean "*a portion* of the vehicle or device that prevents contact between the skin and the volatile substance" and that AirWare's CEO represented that the Infused Products were designed and manufactured so that there are no essential oils *on the ring that touches the inside of the nose*, thus having a "barrier" in accordance with the '982 Patent.

AirWare further falsely contends that "[t]he District Court's opinion suggests that it utterly failed to recognize or properly consider Clerisy's bad faith inability to articulate an infringement theory." App. Br. at 30. This false argument ignores that the District Court's decision clearly acknowledged and stated:

– Before the lawsuit was filed, AirWare's CEO, Jeffrey Rassás, represented to Plaintiff Clerisy's CEO and President, Dr. Mary Maida, that the Accused Products were designed and manufactured so that the essential oils on the Accused Products did not touch the skin or inside lining of the nose. (*See* Doc. 114.)

– In the parties' Joint Case Management Report, filed on January 14, 2013, Defendants represented that "whether Defendants are directly

and/or inducing and/or contributing to the infringement of at least one valid claim of the '982 Patent" was "genuinely in dispute." (Doc. 71 at 11.) In the report Plaintiffs set forth their position with respect to the presence of a barrier in Defendants' products, recounting the information received from Mr. Rasáss:

> Airware's CEO, Jeffrey Rassás, confirmed to Clerisy's President and CEO, Dr. Mary Maida, before this lawsuit was filed that AirWare's products were specifically designed and manufactured so that essential oils do not touch the skin or the inside lining of the nose. Mr. Rassás acknowledged that when AirWare was designing its infused products, there was a concern about the essential oils touching the inside of the nose, due to irritation of the skin. Because of this concern, Mr. Rassás stated that AirWare's products were designed and manufactured so that there are no essential oils on the ring that touches the inside of the nose, and that the essential oils in the products do not touch the skin in any way.

(*Id.* at 5.) Defendants generally denied infringement but did not respond to this allegation specifically. (*Id.* at 8.)

– The Court's claims construction order rejected Defendants' narrow construction of the term barrier, concluding that the patent did not require the presence of "distinct" barrier and carrier layers. (Doc. 102 at 7–9.)

– It was only after the order was issued that Defendants offered their argument that molecules of the essential oils come into contact with the skin.

– Defendants have offered no technical documents in support of the argument that their products do not include a barrier.

– Although they now assert that it was unequivocal that their products did not include a barrier, Defendants never filed a motion for summary judgment of noninfringement.

– In September 2013, when the parties discussed a mutual dismissal of all claims and counterclaims, Defendants refused to execute an affidavit stating: "When Airware's infused products . . . are placed in a user's nasal passage, the essential oils contained on such infused products come into direct contact with the inside lining of the user's nasal passage." (Doc. 114, ¶¶18–20; Ex. B.)

(JA29-30). After carefully reviewing all of the evidence of record, the District Court concluded: "Plaintiffs' claims were not frivolous, nor was its pursuit of them vexatious or intended to harass." (JA31).

At no time did AirWare state that Mr. Rassás' description of the product design was false, nor did it produce any technical evidence that refuted his representation. (JA308-311). Instead, AirWare embarked a course of evasive conduct by failing to produce basic technical documents (JA311), refusing to identify the documents it relied on for its alleged non-infringement (JA312), stonewalling on depositions (JA312-313), and challenging a multitude of issues along the way. Despite *now* claiming that its alleged non-infringement is "unequivocal" (which is false), AirWare previously represented to the District Court that infringement was "genuinely in dispute"[10] (JA127) and never moved for summary judgment of non-infringement. Additionally, the few documents actually

---

[10] AirWare's appeal continues their problematic conduct throughout this case, for example, beginning with their argument to the District Court that Clerisy's discovery was "irrelevant" when seeking a transfer (JA309-311), which they later contradicted by arguing that such discovery was "relevant" in a motion to compel (JA310). AirWare should be estopped from "'playing fast and loose with the courts.'" *Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778, 782 (9th Cir. 2001) (citing *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)).

produced by AirWare only reaffirmed Mr. Rassás' representation that the accused products were designed to prevent the essential oils from touching the skin. (JA316, JA411).

Clerisy's good faith infringement allegations were further strengthened during claim construction, when the District Court adopted the definition of the term "barrier" proffered by Clerisy. (JA39). The District Court construed the term "barrier" to mean "*a portion* of the vehicle or device that prevents contact between the skin and the volatile substance," **and rejected AirWare's construction**, which would have limited the term to "a distinct layer comprised of a different material than a carrier that prevents the volatile substance from contacting the skin." (JA39). In so holding, the District Court expressly rejected AirWare's argument that the "carrier" and "barrier" required "separate and distinct layers perform[ing] opposing functions." (JA39).

AirWare's contention on appeal that the "claims also require a *separate* barrier" (App. Br. at 6) misrepresents the District Court's claim construction. Likewise, AirWare's contention that the "barrier" requires a visible "structure" that can be discerned from merely a "glance" at the Infused Products (App. Br. at 8) is similarly based on AirWare's erroneous view that the "barrier" requires a "separate" structure even though the District Court held that there is no such requirement. In short, a review of AirWare's brief reveals that AirWare's

argument that Clerisy's infringement theory was "frivolous" is premised on a construction that was *rejected* by the District Court.

AirWare argues that the District Court abused its discretion because it allegedly overlooked that Clerisy "obtained unequivocal evidence that there is no barrier, and that molecules of the essential oils touch the user's skin" during the depositions of two of AirWare's witnesses in July and August 2013, following the District Court's Claim Construction Order. App. Br. at 10. However, the District Court *expressly* considered this testimony and concluded that the representations of AirWare's witnesses that "the molecules of the essential oil – presumably in a gaseous rather than liquid form – do not come into contact with the skin" does *not* "establish[] the absence of a barrier, as that claim has been construed by the Court." (JA31).

Moreover, this testimony is not "undisputed evidence" as AirWare falsely contends (App. Br. 30). Indeed, the testimony was not supported by *any* technical documentation (AirWare does not point to any corroborating documents in the record), and it was refuted by documents produced by AirWare in discovery (JA411) and by the representation and admission against interest made by Mr. Rassas that the Infused Products were designed and manufactured so that the essential oils on the products do not touch the skin or inside lining of the nose (JA297). Further, AirWare has previously objected to its witnesses' testimony

saying that it was "incomplete testimony taken out of context," "assume[d] facts not in evidence," "vague and ambiguous," and even outright denied its witnesses' testimony. (JA318).

Even assuming, *arguendo*, that such deposition testimony refuted Clerisy's infringement claims (it did not), this testimony provides no basis for imposing sanctions on Clerisy's counsel. These depositions did not occur until July and August 2013, despite that Clerisy had noticed these depositions in November 2012. (JA316). Clerisy moved to dismiss the action on September 27, 2013, less than two months after these depositions, and thus no proceedings were "multiplied" between the depositions and Clerisy's motion to voluntarily dismiss the case.

Finally, as noted by the District Court, the law is clear that a lack of merit cannot support the imposition of sanctions pursuant to Section 1927. *See Morgan v. County of Yolo*, 277 F. App'x 735, 736 (9th Cir. 2008) (reversing imposition of sanctions and noting that while the "action . . . failed, and properly so, that result was not so obvious in advance that it can be inferred that [counsel] knowingly or recklessly pursued a futile claim. [Counsel] had nothing to gain by advancing frivolous claims, and nothing in the record suggests that he did not sincerely believe he was advancing colorable claims"). Thus even if the testimony elicited in July and August 2013 was "unequivocal" evidence of non-infringement (which Clerisy disputes), AirWare's contention that this testimony would be sufficient to

- 45 -

justify the imposition of sanctions against Clerisy's counsel pursuant to Section 1927, absent *any* evidence of prior bad faith, is baseless as matter of law. *See, e.g., Schwartz v. Million Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003) ("lack of merit itself cannot serve as a basis for the imposition of sanctions.").

AirWare's attempt to analogize Clerisy's counsel's conduct in this case to the blatant and sustained abuse of court processes which occurred in *Phonometrics, Inc. v. Westin Hotel Co.*, 350 F.3d 1242 (Fed. Cir. 2003) reveals the absurdity of AirWare's appeal. In *Phonometrics*, after the district court entered judgment in favor of Westin, Westin requested attorney fees and costs pursuant to both 35 U.S.C. § 285 and 28 U.S.C. § 1927. The district court found that Phonometrics' continued maintenance of the action against Westin after the district court had already issued multiple adverse decisions that clearly invalidated their position in prior cases asserting identical claims, after *this Court* issued multiple decisions affirming those rulings, and after the district court warned Phonometrics that it would be sanctioned if it did not withdraw its complaint, was "vexatious, supported an 'inference of bad faith' and 'resulted in unjustified multiplication of proceedings.'" The district court awarded attorneys' fees pursuant to 35 U.S.C. § 285 and 28 U.S.C. § 1927 that had been incurred after the this Court rendered its first decision that affirmed dismissal of Phonometrics' claims, and this Court

affirmed, finding the district court's imposition of sanctions under these egregious circumstances was not an abuse of discretion.

The lower court's decision in *Phonometrics* was based on the fact that this Court had previously held, in an appeal of a decision involving identical claims, that as a matter of law, "the infringement of the [asserted patent] could only be possible if [Westin]'s hotels provided real-time visual displays showing the costs of the call to the caller during the call" and Phonometrics "never once accused [Westin] of violating the '463 patent as it was defined" in the prior binding and mandatory case law. In this case, conversely, there has been no decision (let alone *successive* decisions affirmed by this Court on appeal) with respect to Clerisy's infringement claims. Indeed, as the District Court noted, "at this point there has been no determination concerning the merits of Plaintiffs' claims." (JA31). In the only substantive order in the case – the July 23, 2013 Claim Construction Order – the District Court *rejected AirWare's constructions of all eight disputed claim terms and phrases*, and concluded that the "carrier" and "barrier" did not require the presence of separate and distinct layers and materials. (JA39). Moreover, the District Court's December 4, 2013 decision properly found that Clerisy's case was not frivolous or undertaken in bad faith. (*Id.*)

AirWare's desperate citation to *Phonometrics* notwithstanding, this was not a "frivolous" patent suit – it was well-supported and meritorious. Unlike the

plaintiffs in *Phonometrics*, Clerisy has not sued successive lawsuits based on theories that have been repeatedly rejected by the Federal Circuit. Nor has Clerisy been warned, either by the District Court or any other court, that pursuing its claims based would result in the imposition of sanctions. Nor has Clerisy engaged in vexatious motion or discovery practices, or noticed successive appeals to this Court based on previously-rejected legal theories.

Clerisy simply moved to dismiss this case because it could no longer afford to litigate this action. Clerisy moved for voluntary dismissal after prevailing on claim construction, prior to completion of discovery, and prior to any adjudication on the merits of the infringement claims. Not surprisingly, AirWare has cited no case imposing sanctions based on a record such as this one, and certainly no appellate case *reversing* the denial of sanctions in such a case.

There was no basis for the District Court to impose sanctions under Section 1927 against Clerisy's counsel on this record. AirWare's argument that the District Court abused its discretion in denying AirWare's request for attorneys' fees and costs is frivolous, and the District Court's decision should be affirmed.

## <u>CONCLUSION</u>

For all of these reasons, the District Court's order dismissing the claims and counterclaims without prejudice and denying AirWare's motion for attorneys' fees and costs should be affirmed in its entirety. There was *no* basis for fee-shifting under Federal Rule 41(a)(2) given the covenant not to sue executed by Clerisy, nor were any sanctions justified under Section 1927 given that the infringement allegations were well-supported and maintained in good faith. There was *no* error in the District Court's view of the law or assessment of the facts, let alone a *clearly* erroneous assessment of the facts required to show an abuse of discretion by the District Court. AirWare's frivolous appeal, premised on its misrepresentations and false statements to this Court, should be dismissed.

Dated: April 24, 2014               Respectfully submitted,


 s/Jeremy P. Oczek
Jeremy P. Oczek
BOND, SCHOENECK & KING, PLLC
Key Center, 40 Fountain Plaza, Suite 600
Buffalo, New York 14202
Telephone: (716) 566-2800
Email: jpoczek@bsk.com

Frederick J.M. Price
Kate I. Reid
BOND, SCHOENECK & KING, PLLC
One Lincoln Center
Syracuse, New York 13202
Tel: (315) 218-8000
Email: fjprice@bsk.com
Email: kreid@bsk.com

*Attorneys for Plaintiffs-Appellees*
*Clerisy Corporation and Reed*
*Transition Technologies, LLC*

# CERTIFICATE OF FILING AND SERVICE

## United States Court of Appeals
## for the Federal Circuit

*Clerisy Corporation v Airware Holdings Incorporated,* 2014-1211

## CERTIFICATE OF SERVICE

I, Maryna Sapyelkina, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by BOND, SCHOENECK & KING, PLLC, Attorneys for Plaintiffs-Appellees to print this document.  I am an employee of Counsel Press.

On the **24th Day of April, 2014**, counsel for Appellees has authorized me to electronically file the within **Brief for Plaintiffs-Appellees** with the Clerk of the Court using the CM/ECF System, which will serve via e-mail notice of such filing to any of the following counsel registered as CM/ECF users:

> Paul J. Robbennolt
> Michelle E. Dawson
> Devan V. Padmanabhan
> Winthrop & Weinstine, P.A.
> 225 South Sixth Street, Suite 3500
> Minneapolis, MN 55402
> 612-604-6761
> probbennolt@winthrop.com
> mdawson@winthrop.com
> dpadmanabhan@winthrop.com

> *Counsel for Defendants-Appellants*

Upon acceptance by the Court of the e-filed document, six paper copies will be filed with the Court, via Federal Express, within the time provided in the Court's rules.

April 24, 2014
/s/ Maryna Sapyelkina
Maryna Sapyelkina
Counsel Press

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATION, TYPEFACE
## REQUIREMENTS AND TYPE STYLE REQUIREMENTS

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).  The brief contains 11,767 words, excluding parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and type style requirements of Federal Rule of Appellate Procedure 32(a)(6).  The brief has been prepared in a proportionally spaced typeface using MS Word in a 14 point Times New Roman font.

Dated: April 24, 2014

  s/Jeremy P. Oczek
Jeremy P. Oczek
BOND, SCHOENECK & KING, PLLC
Key Center, 40 Fountain Plaza, Suite 600
Buffalo, New York 14202
Telephone: (716) 566-2800
Email: jpoczek@bsk.com

Frederick J.M. Price
Kate I. Reid
BOND, SCHOENECK & KING, PLLC
One Lincoln Center
Syracuse, New York 13202
Tel: (315) 218-8000
Email: fjprice@bsk.com
Email: kreid@bsk.com

*Attorneys for Plaintiffs-Appellees*
*Clerisy Corporation and Reed*
*Transition Technologies, LLC*